## DAN TROY v. JOHN V. ELLIS.

### (Case No. 1372.)

1. DEED — DESCRIPTION.— A tract of land was conveyed by deed, which described it by metes and bounds, by the name of the grantee, and as " containing eight hundred acres, more or less." It was transferred by several deeds to successive purchasers by the same description, except that the words "more or less" were omitted. The last purchaser, B., sold to three parties; to one he conveyed an undivided interest of three hundred acres, to another an undivided interest of three hundred and fifty acres, and to another an undivided interest of one hundred and fifty acres, making in all eight hundred acres. These three interests were purchased by C., who went into possession, and claimed the entire survey. B. afterwards sold all his interest in the survey to D., describing it as an excess, "more or less, above the eight hundred acres heretofore conveyed by this vendor." The excess was about two hundred acres. In a suit brought by D. against C. to recover that excess, *held*, that the deed to D. conveyed whatever excess in the survey there was over eight hundred acres.

APPEAL from Bee. Tried below before the Hon. H. Clay Pleasants.

This suit was brought April 29, 1881, by appellant against appellee for an undivided interest in a tract of land in Bee county and for partition. The petition alleged that defendant owned eight hundred acres in the survey, and that the residue, supposed to be one thousand acres, belonged to plaintiff. Prayer for an order of survey to ascertain the precise amount of plaintiff's interest, for partition, etc. The survey was described by metes and bounds.

September 28, 1881, defendant answered by denying that plaintiff had any interest in the land. The cause was submitted to the court (without a jury) at September term, 1881. Judgment for defendant, and plaintiff appealed.

It appears that the survey had been originally granted to Washington Stevens. Stevens (the grantee) conveyed it to McInnis, describing the land by metes and bounds, by the name of the grantee, and as containing "eight hundred acres, more or less." McInnis conveyed to Dunn, describing the land in the same way, except that, in giving the number of acres, he omitted the words "more or less."

Dunn conveyed to Halloway by the same description as the last, and referring to the previous conveyances down to himself.

Afterwards, in June, 1860, Halloway conveyed to George O. Snell an undivided interest of three hundred acres out of the survey, describing the land conveyed as a "part of the Washington Stevens eight hundred acre survey;" and to be so taken as to give the part conveyed a proportionate share of timber and water.

He next, in 1861, made a similar conveyance to John H. Uffy of three hundred and fifty acres out of the survey, describing it as "part of the eight hundred acre survey patented to Washington Stevens," and making the same provisions as to water and timber. In 1869 he made a like conveyance to John A. Gregory of one hundred and fifty acres out of the survey, describing it "as a part of the eight hundred acre Washington Stevens tract," and making the same provisions as to water and timber.

Lastly, in February, 1881, Halloway conveyed by quitclaim to plaintiff all his interest in the Washington Stevens survey, and describes that interest as the "excess, more or less, over and above the eight hundred acres of said grant heretofore conveyed by this vendor."

But before this last conveyance the defendant had purchased the interest of the three preceding vendees (of Halloway), Snell, Uffy and Gregory, and was in possession of the land at the date of this suit.

Plaintiff proved that the defendant, being in possession, had refused to allow him to make a survey of the land. He also proved by a practical surveyor that he (the surveyor) had from the field notes made a plat of the land and a calculation of its quantity, showing that it contained two hundred acres over and above the eight hundred acres conveyed by Halloway previous to his conveyance to plaintiff.

There is but one issue presented in the four assignments of error, to wit, error in rendering judgment for the defendant, and in rendering judgment before ordering a survey.

*Lane, Payne* and *Beasley,* for appellant.

*Lackey, Stayton & Kleberg,* for appellee.

DELANY, J. COM. APP.— Our opinion is that there is error in the judgment of the court below. We copy the first proposition contained in appellee's brief as presenting the probable ground upon which the court rested its action in the premises. It is as follows:

" A person holding land under deeds from several grantors, which in the aggregate convey a specific number of acres, which have been preceded by a succession of deeds from the original grantee, each of which called for the preceding conveyance, and which conveyed a certain grant of land, describing it as containing a specific number of acres more or less, it is a presumption of law that it was the intention of the various succeeding grantors to convey the entire

---

---

tract, and the last grantee would hold the entire tract, be it more or less."

This seems to us an exceedingly doubtful proposition. Counsel refer us to no authority. They do not rest it upon any established principle of jurisprudence; but it is propounded rather as a rule of law, carrying upon its face the evidence of its authority.

Presumptions of law, says Prof. Greenleaf, "are founded either upon the first principles of justice, or upon the laws of nature; or the experienced course of human conduct and affairs, and the connection usually found to exist between certain things. The general doctrines of presumptive evidence are not, therefore, peculiar to municipal law, but are shared by it in common with other departments of science." It does not occur to us that either the first principles of justice or the laws of nature have anything to do with this matter. And the experienced course of human conduct and affairs in this respect has hardly been sufficiently uniform to establish any definite rule on the subject of intention.

This case is not to be decided upon presumptions of any sort. The deeds are before us, and we must look to the deeds to ascertain the rights of the parties who claim under them. There is no doubt about the meaning of the several conveyances, extending from the original grantee, Stevens, down to Halloway. They evidently intended to convey the entire survey. They describe it by the name of the original grantee, and by metes and bounds. They convey the land thus designated by name, and contained within those metes and bounds. It is true, they add as a part of the description the supposed number of acres. But this was of little consequence. It contributed little or nothing towards identifying the land conveyed. The title would have passed even if no number of acres had been mentioned, or even though the number had been wrong. Inasmuch as the subject matter had already been fully described by the name of the original grantee and the field notes, the misdescription as to the number of acres would have been rejected as *falsa demonstratio.* 1 Greenl. on Ev., sec. 301.

It is true that when land is conveyed by metes and bounds, but it is clear, either from the deed or from the facts attending the sale, that the parties intended a particular number of acres at a given price per acre,— in this case, if the tract described should contain a large excess, or materially fall short of the number of acres intended, the party injured may apply to a court of equity to correct the mistake. O'Connel *v.* Duke, 29 Tex., 299; Smith *v.* Fly, 24 Tex., 345. If such circumstances had existed in the earlier convey-

ances, Halloway or Dunn or McInnis might, perhaps, have resorted to this remedy. But Halloway's vendees, Snell and Uffy and Gregory, could have no interest in this question and for the best of reasons. They bought, each of them, a specific number of acres out of a large survey; and if they got the quantity they each bargained for, it was of no consequence to them whether the larger survey contained eight hundred or eight thousand acres. It appears to us that by the earlier conveyances down to Halloway, the title to the entire survey vested in him.

Let us suppose that, after Halloway had conveyed to Uffy and Snell, these two vendees had applied for a partition. Certainly no more land would have been set apart to them than they had bought. The residue of the survey, whether it contained one hundred and fifty acres or five hundred, would have remained to Halloway. A like result would have followed if the partition had been made after the conveyance to Gregory. The portion purchased by each vendee would have been set apart to him, and the residue would remain to Halloway. The title to this residue would pass by his conveyance to the plaintiff, and the defendant, under his deeds from Uffy, Gregory and Snell, would take only so much of the land as Halloway had conveyed to them.

From the pleadings and evidence we think the plaintiff made a *prima facie* case for relief. The judgment should be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion adopted March 28, 1884.]

Associate Justice STAYTON did not sit in this case.