RALPH W. CONANT, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5617.   Promulgated July 31, 1946.

*Robert A. B. Cook, Esq., J. N. Welch, Esq.*, and *Lawrence E. Green, Esq.*, for the petitioner.

*J. T. Haslam, Esq.*, for the respondent.

OPINION.

KERN, *Judge*: Petitioner created four trusts, with his wife as primary beneficiary of each. She was given the absolute power to cancel the trusts at any time and to take over their corpus and undistributed income. The income-producing corpus of the trusts consisted of 700 shares of corporate stock owned by petitioner at the time the trusts were created. Of this stock, 370 shares were at that time pledged by petitioner to a business associate to secure the repayment of some $37,000 which petitioner had borrowed. In 1940 the trust received dividends from the stock in the total amount of $16,800, of which $8,880 represented dividends on the pledged stock. The trustee paid the premium on an insurance policy insuring the life of the petitioner and assigned to the trust, pursuant to instructions given by petitioner's wife and the power granted to it by the trust instruments. Pursuant to the same instructions and power, it also paid in full the debt of petitioner secured by the pledge of the stock. This payment was made from trust income, and from advances made by petitioner and his wife to the trusts. In 1941 the trustee again paid the insurance premium out of trust income, and also repaid to petitioner the amount of the advances made by him to the trusts in the previous year. These payments were made pursuant to the instructions given to the trustee by petitioner's wife.

Respondent added to petitioner's reported taxable income for 1940 and 1941 the amounts paid by the trustee on account of the insurance premiums, and the remaining income of the trusts which would have been distributed to the beneficiaries had it not been, as it was, used in the payment of the obligation of petitioner secured by the pledge of the stock (in 1940) and the repayment of the advances made by petitioner to the trustee (in 1941). The question now before us is whether respondent erred in adding the whole or any part of these amounts to petitioner's reported income for the taxable years.

Respondent relies principally upon section 167 (a) of the Internal

Revenue Code,[1] and he states that this is a companion case of *Clifton B. Russell*, 5 T. C. 974, and involves an issue similar to issue 1 in that case.

Petitioner contends that, because of the unqualified power and authority given to his wife in paragraph 3 of the trusts "to cancel or revoke this trust at any time, in whole or in part" and because, in the event of such cancellation or revocation, "it shall be the duty of the Trustee forthwith to pay unto her the whole of the principal  *  *  * together with any accrued and undistributed income  *  *  * free and discharged of all trusts," he is not taxable on any of the income of the four trusts here involved, but that all of such income is taxable to his wife.

As to all of the income which the trusts were entitled to receive by reason of the property transferred to them, petitioner's position is unassailable. Such an unqualified power of revocation gives to the person who possesses it such unfettered dominion and control over the trust property as to make such person taxable on the income therefrom under section 22 (a) of the Revenue Acts of 1936 and 1938, as the owner of it. *Jergens* v. *Commissioner*, 136 Fed. (2d) 497; certiorari denied, 320 U. S. 784. *Richardson* v. *Commissioner*, 121 Fed. (2d) 1; *Ella E. Russell*, 45 B. T. A. 397; *Elsie C. Emory*, 5 T. C. 1006.

The basic reasoning of those cases is that, because of the powers over trust corpus and income granted to the beneficiary of a trust, the beneficiary must be considered for tax purposes as the owner of the income, rather than the trust itself. Consequently, the income which was nominally that of the trust, but which was, in reality, that of the beneficiary, was held taxable to the beneficiary under section 22 (a) of the Internal Revenue Code rather than to the trustee under the provisions of section 161. In *Edward Mallinckrodt, Jr.*, 2 T. C. 1128, we concluded (at p. 1136) that "*  *  * the benefits held by and belonging to petitioner, directly or indirectly, were such as to require the conclusion that he was the owner of the income here in question, within the meaning of section 22 (a), *supra*." In the opinion of the

[1] SEC. 167. INCOME FOR BENEFIT OF GRANTOR.
(a) Where any part of the income of a trust—
(1) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, held or accumulated for future distribution to the grantor ; or
(2) may, in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income, be distributed to the grantor ; or
(3) is, or in the discretion of the grantor or of any person not having a substantial adverse interest in the disposition of such part of the income may be, applied to the payment of premiums upon policies of insurance on the life of the grantor (except policies of insurance irrevocably payable for the purposes and in the manner specified in section 23 (o), relating to the so-called "charitable contribution" deduction) ;
then such part of the income of the trust shall be included in computing the net income of the grantor.

Circuit Court of Appeals, which affirmed our decision, *Mallinckrodt* v. *Nunan*, 146 Fed. (2d) 1, that court said that this affirmance was "because the power of petitioner to receive this trust income each year, upon request, can be regarded as the equivalent of ownership of the income for purposes of taxation." In *Richardson* v. *Commissioner, supra,* the court, at page 3, stated the question there involved as follows: "* * * whether an unfettered control over the corpus of a trust either in the grantor or in the donee of a power of revocation, who may appropriate it to his personal use, is not the equivalent of ownership of the property for tax purposes." The court held that it was. In *Jergens* v. *Commissioner, supra,* at p. 498, the court said "with respect to the shares of stock, which were the only income-producing properties of the trust estate, and the income therefrom, the taxpayer was given control so absolute as to be consonant with full ownership." In *Sydney R. Newman,* 5 T. C. 603, we said of these cases: "Each of those cases involved the ownership for tax purposes of trust income by persons other than the grantors. In each case it was held that the taxpayer, because of his power and control over the trust property and the trust income, was taxable as the owner."

In the instant case insurance premiums were paid out of income which was nominally the income of the trusts on a policy of insurance on the life of the grantor irrevocably assigned to the trusts. If the income in question is to be considered for tax purposes as the income of the trusts, then that part of it so used might be taxable to the grantor under the literal provisions of section 167 (a) (3). However, the same reasons which persuade us that all of the income which was nominally that of the trusts is taxable to the grantor's wife rather than taxable to the trustees under section 161, or taxable to the grantor under section 167 (a), compel us to the conclusion that that part so used for insurance premiums is also taxable to the wife rather than to the grantor under section 167 (a) (3). For tax purposes, the income in question was not the income of the trusts; it was the income of the grantor's wife. Section 167 by its terms applies only to the income of a trust, i. e., the income from property held in trust which would be taxable to the fiduciary under section 161, were it not for the provisions of section 167. It does not apply to income which is nominally the income of a trust but which is in reality, and for tax purposes, the income owned by a beneficiary having such powers, dominion, and control over the trust corpus as justify her taxation upon such income under the provisions of section 22 (a).

The income of the trusts must be considered for tax purposes as the income of petitioner's wife and, consequently, the payments of premiums on policies of insurance on petitioner's life made from this income at the direction of his wife must be considered, for tax purposes,

as if made by his wife from her own income. Under this construction, these payments can not be considered as constituting income taxable to petitioner under section 167 (a) (3). See *Stephen Hexter*, 47 B. T. A. 483.

However, with respect to that part of the trust receipts which was derived in 1940 from dividends on the pledged stock and was used to pay the personal obligation of the grantor, we arrive at a different conclusion. The schedules attached to the trust instruments described the interest in these shares conveyed to the trusts as "equity in" the number of shares of pledged stock which was in each case transferred. Thus it was recognized that the grantor gave to the trusts only that interest in the stock which he then possessed, which was a general property right, subject to a lien of the pledge securing the grantor's debt. These shares were pledged for the payment of the grantor's personal indebtedness, and, so far as the record discloses, were held in the possession of the grantor's creditor, whose rights with respect thereto were prior and superior to the rights and powers created by the trust instrument. The pledgee's rights could not be divested by any later act of the pledgor or his assignees.

A pledgee who holds pledged stock as security for a debt has, in the absence of special agreement to the contrary (and none is shown to have existed here), the right to (and some courts hold the duty to secure) possession and control of the stock and to the dividends thereon for application against the debt. Fletcher's Cyclopedia of Corporations, Permanent Ed., vol. 11, sec. 5382, and cases there cited; *Railroad Credit Corporation v. Hawkins*, 80 Fed. (2d) 818; 18 C. J. S., sec. 469 (b).

We must assume that the pledgee of the stock here had such rights, by contract with the grantor, antecedent and superior to any interest of the primary beneficiary, of the trusts later created. By her power of revocation Mrs. Conant could have prevented the execution of any of the trustee's powers, so that any payments made by the trustees pursuant to their powers, being always subject to her overriding veto power, might be said to have been made on her behalf and at her direction. But the pledgee's right to receive the dividends did not arise out of the trust instrument, was in no sense subject to it, and could not be divested by reason of any power contained therein. Even if Mrs. Conant had revoked the entire trust and received as her own all the trust property, her action would not have touched the pledgee's right to the possession of the stock and the receipt of the income arising therefrom. That right existed prior to the time her rights were created, and she took whatever interest she had subject to the pledge. Her power over the property, great as it was, stopped short of unfettered control over the pledged stock and the dividends paid thereon.

She had no right at any time to such dividends, and she can not therefore be held liable for tax thereon.

In *Adolphus Busch III*, 3 T. C. 547, we recognized this rule, although in that case the pledge agreement specifically provided for a different disposition of the dividends.

In *J. Gregory Driscoll*, 3 T. C. 494, the lessee of an oil lease mortgaged it to secure payment of his personal indebtedness, and assigned the oil to be produced to his mortgage creditor. He later assigned his interest, subject to the mortgage, and we held the assignee, who had not assumed the mortgage debt, was not taxable on the income applied to its satisfaction, since she never at any time had unfettered control of the income. See also *Herbert A. Loeb*, 5 T. C. 1072.

Petitioner relies on *Henry A. B. Dunning*, 36 B. T. A. 1222; *Ralph L. Gray*, 38 B. T. A. 584; and *Stephen Hexter, supra*, which hold that, where a beneficiary who is entitled to receive income without restriction on its use applies the income voluntarily to payment of the grantor's legal obligation, the grantor can not be taxed on such income. This contention overlooks the point which we have tried to develop above, that the beneficiary here, having received no more than the grantor's equity in the stock, subject to the preexisting pledge for the grantor's personal obligation, did not receive and was not at any time entitled to the unrestricted use of the dividends produced by the pledged stock, and for that reason can not be taxed thereon. Such income was previously and effectively disposed of by the grantor, for his own economic benefit, and is taxable to him.

Under this reasoning only the amount of the dividends paid on the pledged stock while the stock was held by the pledgee would constitute income taxable to the petitioner. All of the other income received by the trust was, in reality, the income of petitioner's wife and was taxable to her, regardless of the purposes for which she permitted the trustee to spend it. Consequently, the dividends paid on the stock in 1941, after the debt secured by pledge was satisfied, would be taxable to petitioner's wife and not to the petitioner.

In *Clifton B. Russell*, 5 T. C. 974, as here, the grantor's equity in certain shares of stock was transferred to the trust involved there. The stock was, at the time of the transfer, pledged as security for the payment of a personal indebtedness of $25,000 of the grantor. However, in that case, the indebtedness was completely retired early in the first tax year, and the stock redeemed, by the use of $20,000 loaned to the trust by the grantor, and the balance from undistributed trust income. The loan to the grantor was later repaid by the trust out of dividends. We held that the grantor was taxable on the amounts so used, under section 167, on the theory that they were used to discharge petitioner's own obligation at the discretion of trustees who had no adverse interest. It should be noted that the beneficiary there had

no power to revoke the trust and thus acquire the trust property without the assent of the trustees. Therefore, it could not be said in that case that the income of the trust was, in reality, and for tax purposes, the income of the beneficiary, and it is accordingly distinguishable from the instant case, in which the debt of the petitioner was not paid in 1941 from the income of the trust, but from the taxable income of the beneficiary of the trust.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

HILL, *J.*, dissents.

BLACK, *J.*, concurring in the result: I am convinced that the principle involved in the instant case is the same as was involved in *Jergens* v. *Commissioner*, 136 Fed. (2d) 497; *Richardson* v. *Commissioner*, 121 Fed. (2d) 1; and *Elsie C. Emery*, 5 T. C. 1006, all of which are cited in the majority opinion.

I am, therefore, in entire accord with the majority opinion of the Court wherein it holds that none of the income of the four trusts is taxable to petitioner, the settlor of the trusts, *except* that part of the income representing the dividends on the pledged stock. As to this latter exception, I am not so sure. Among the cases cited by the majority opinion in support of its conclusion that petitioner should be taxed with the dividends on this pledged stock which were applied to the indebtedness secured by the stock is *J. Gregory Driscoll*, 3 T. C. 494. It must be conceded there are some similarities in the facts and circumstances of the *Driscoll* case to those which are present in the instant case. It is for that reason alone that I concur with the majority opinion on that point, though with some doubt that any of the income of the four trusts should be taxed to petitioner under the doctrine of the *Jergens* case and other cases referred to above.

DISNEY, *J.*, agrees with the above.