SIMS   v.   WOODS et al.

No. 15503.

Court of Civil Appeals of Texas.

Fort Worth.

April 16, 1954.

Rehearing Denied May 14, 1954.

Cecil Murphy, Gainesville, for appellant.

Nelson, Montgomery, Robertson & Sellers and Allan D. Montgomery, Wichita Falls, for appellees.

BOYD, Justice.

This suit was filed by appellees J. D. Woods, Laura Harrison Wiser and husband, T. J. Wiser, R. C. Lipscomb and Harold D. Herndon, against Sinclair Oil & Gas Company, in which appellant S. W. Sims was interpleaded, for royalty payments in the amount of $867.42 and for construction of certain mineral deeds. Sinclair Oil & Gas Company is running the oil from the land involved, and deposited in the registry of the court the sum of $867.42, which is the amount of the disputed royalty payments, and was thereupon discharged. The suit then became an action by appellees against appellant to determine the ownership of the fund and of future royalty payments.

On January 18, 1941, T. L. Miller and wife executed to appellant Sims an oil and gas lease on all that certain tract of land situated in the County of Grayson, State of Texas, described as follows, to wit: 200 acres of the S. Carmena Survey, Abst. No. 262, Grayson County, Texas, beginning at the Northwest corner of said Survey; thence south 1963 vrs. to the Southwest corner of said survey and the Southeast corner of Stickney; thence East 714 vrs. Thos. Roots Southwest corners; thence North 1963 vrs. to the Northwest corner of Thos. Roots land and North line of Carmena Survey; thence West 714 vrs. to the beginning, containing 247 acres; except 2 acres for cemetery and 45 acres, viz.: beginning Northeast corner of above tract, Northeast corner of 227 acres deeded by D. L. Thurston to T. L. Miller 203/34; thence South 475 vrs.; thence West 536 vrs.; thence North 475 vrs.; thence East 536 vrs. to the beginning, containing 45 acres.

After the execution of the lease, but on the same day, Miller and wife executed to appellant a deed to a one-half interest in the minerals under the land described in the lease.

On March 7, 1941, appellant executed to Laura Harrison, now Laura Harrison Wiser, and F. E. Case a deed conveying 25/200ths of the minerals in the tract described as 200 acres, said deed containing the following provision: "It being the intention of the Grantor to convey and of the Grantee to purchase an undivided twenty-five (25) acre interest in and to all of the oil, gas and other minerals in and under the above described land." Mrs. Wiser owns one-half of the interest conveyed by said deed.

On March 7, 1941, appellant executed to Pearl M. Kuehn a deed to an undivided 25/200ths of the minerals in said tract, the deed including this provision: "It being the intention of the Grantor herein, to convey to Grantee a full undivided 25 acre mineral interest, in and to said above described (land)." Appellees Lipscomb and Herndon each own one-fifth of the interest conveyed to Pearl M. Kuehn.

On March 28, 1941, appellant executed to appellee Woods a deed to an undivided 25/200ths interest in the minerals under the tract, the deed containing this provision: "(It being the intention of the grantor to convey and of the Grantee to Purchase an undivided Twenty-five acre mineral interest in and to all of the oil, gas, and other minerals in and under the above described land.)" In each of the deeds executed by appellant the clause relative to the acre interest intended to be conveyed was typed in a blank space in a printed form of deed and followed the granting clause.

In subsequent paragraphs of the deeds identical provisions are found, as follows:

"Said land being now under an oil and gas lease executed in favor of (record owner), it is understood and agreed that this

sale is made subject to the terms of said lease and/or any other valid lease covering same, but covers and includes 25/200ths of all of the oil royalty and gas rental or royalty due and to be paid under the terms of said lease, in so far as it covers the above described land.

"It is understood and agreed that 25/200ths of the money rentals, which may be paid, on the above described land, to extend the term within which a well may be begun under the terms of said lease, is to be paid to the said Grantee; and, in event that the above described lease for any reason becomes cancelled or forfeited, then and in that event, Grantee shall own 25/200ths of all oil, gas and other minerals in and under said lands, together with a like 25/200ths interest in all bonuses paid, and all royalties and rentals provided for in future oil, gas and mineral leases covering the above described lands."

After the mineral deeds were executed and production was obtained on the land, a survey of the tract was made and it was found that it contained 226.88 acres.

Appellees contend that they each own the same percentage interest in the minerals and royalty under the entire tract of 226.88 acres as was set out in the respective conveyances wherein the tract was described as 200 acres. Appellant contends that in each conveyance it was the intention of the parties to sell and buy a certain acre interest as distinguished from a certain percentage interest. Of course, if the tract contained only 200 acres, the percentage interests would equal the acre interests; but appellant claims that since there is an excess of 26.88 acres in the tract, the special intention clauses in the deeds limit the grantees' interests to acre interests, and that he owns the proportion of the minerals and royalty claimed by appellees under the land in excess of 200 acres, being 47.5/200ths of 26.88 acres, or 6.384 acres.

The court held that the deeds conveyed to appellees an aggregate of 47.5/200ths of the royalty under the existing lease, and that they are entitled to the $867.42 in the registry of the court in the proportion that

the interest of each bears to 47.5/200ths, but found against appellees so far as to decree that 6.384/226.88ths of the mineral interest in controversy would be owned by appellant after the termination of the existing lease. Appellees acquiesced in that part of the judgment finding against them, and make no complaint.

Our decision, therefore, involves a construction of the deeds to determine what interests were conveyed.

In ascertaining what parties to a conveyance meant we, of course, must not overlook what they said in the instrument effecting that conveyance. In each of the deeds the special intention clause speaks for both parties, the grantor and the grantee. If the grantor intended to sell and the grantee intended to buy a certain per acre interest in the minerals, and if the grantor did not intend to sell and the grantee did not intend to buy a certain percentage interest, except in so far as the size of the tract rendered the percentage interest equal to the per acre interest set out in the deed, it would seem that a solution to the problem has been found.

■ The primary consideration in construing a deed is to ascertain the intention of the parties as gathered from the instrument. Cravens v. White, 73 Tex. 577, 11 S.W. 543, 15 Am.St.Rep. 803; Associated Oil Co. v. Hart, Tex.Com.App., 277 S.W. 1043; Gibbs v. Barkley, Tex.Com.App., 242 S.W. 462; Vogel v. Allen, 118 Tex. 196, 13 S.W.2d 340; 14 Tex.Jur., p. 910, sec. 132. It is true that such intention is not to be gathered from any particular clause, but from a fair construction of the entire deed. Bumpass v. Bond, 131 Tex. 266, 114 S.W.2d 1172; Hopkins v. Hopkins, 103 Tex. 15, 122 S.W. 15; Benskin v. Barksdale, Tex.Com. App., 246 S.W. 360.

■ We think it is settled that restrictive words may control the grant, if that is the intention of the parties, whether they come before or after the granting clause. Cromwell v. Holliday, 34 Tex. 463, 446; Buckner v. Keny, Tex.Civ.App., 109 S.W.2d 361. The intention of the parties may be expressed anywhere in the instru-

ment, and when it may be ascertained it should be given effect, without regard to technical rules of construction. Berry v. Spivey, 44 Tex.Civ.App. 18, 97 S.W. 511; Dallas Joint Stock Land Bank of Dallas v. Harrison, 138 Tex. 84, 156 S.W.2d 963. A clause appearing in the recitals or premises of a deed, expressing the intention of the grantor to convey less than a fee simple estate, must be given effect, even though neither the granting clause, the habendum clause, nor the warranty clause expresses any limitation of the estate conveyed. Robison v. Murrell, Tex.Civ.App., 184 S.W.2d 529, writ refused, w. m.

■ Courts may not by construction destroy any provision of a deed when all may be harmonized; and when it can be done, all of them must be allowed to stand without regard to any relative value of conventional clauses. Ogletree v. Abrams, Tex.Com. App., 67 S.W.2d 227; Sun Oil Co. v. Burns, 125 Tex. 549, 84 S.W.2d 442; Moore v. City of Waco, 85 Tex. 206, 20 S.W. 61; Scheller v. Groesbeck, Tex.Com.App., 231 S.W. 1092.

■ Such construction must be given to a deed as will effectuate the intention of the parties, if it is legally possible to do so consistently with its language, and the object is to ascertain their intention as expressed by the language used; the question being, not what the parties meant to say, but the meaning of what they said. · The intention of the grantor as gathered from the deed as a whole controls the interpretation, and if susceptible to such construction, the deed must be interpreted so as to give effect to all of its provisions. No clause may be rejected, unless from unavoidable necessity; but some clauses cannot have effect according to their literal terms when contrary to the plain intent of the deed viewed as a whole. 8 R.C.L., p. 1039, sec. 95, and p. 1047, sec. 101.

It has been held that specific language of an instrument will control general terms. Reynolds v. McMan Oil & Gas Co., Tex. Com.App., 11 S.W.2d 778; 14 Tex.Jur., p. 921, sec. 143.

■ ■ If it should be held that the intention clauses in the deeds under consideration are meaningless, then it might be said that the parties intended to sell and buy certain percentage interests in the tract described as 200 acres, although it contained 226.88 acres. Indeed, in the absence of such intention clauses, it would appear that the deeds could be fairly construed to invest appellees with the title to 47.5/200ths of the minerals and royalty under the 226.-88 acres. But we cannot hold that the parties had no purpose in mind when they inserted the intention clauses in the deeds under consideration. And we see no such repugnancy between the provisions of the deeds as would warrant us in striking down the intention clauses. All of the provisions can stand and be construed together. The intention clauses do not destroy the granting clauses; and if they specifically limit the granting clauses, they must nevertheless be allowed to stand if they express the intention of the parties. North v. North, Tex.Civ.App., 2 S.W.2d 481, and cases there cited.

■ That there is no fatal inconsistency in the provisions of the deeds under consideration is apparent when we reflect that had there been exactly 200 acres in the tract covered by the lease, the percentage interests and the acre interests would have coincided. If it be held that appellees acquired certain acre interests instead of certain percentage interests in the 226.88 acres, they will still have exactly what they bought and paid for, although it has been discovered that appellant had more than he sold. Having received what it was the intention of appellant to convey, appellees cannot justly complain if the grantor had more than he sold, whether or not he knew it at the time. Troy v. Ellis, 60 Tex. 630.

■ It is therefore our opinion that the proper construction of the deeds is that appellees acquired definite acre interests in the minerals and royalty under the tract therein described, it being the intention of the grantor to sell and of the grantees to

buy such definite acre interests. In the aggregate appellees acquired title to 47.-5/200ths of the royalty payable under the terms of the existing lease, in so far as it covered "the above described land," that is, the land under which the interests were sold; and we think the court erred in decreeing to appellees 47.5/200ths of the royalty payable under the lease on the entire 226.88 acres.

The position of appellees is that the case is controlled by the decisions in such cases as Hoffman v. Magnolia Petroleum Co., Tex.Com.App., 273 S.W. 828, 829, and Olvey v. Jones, Tex.Civ.App., 95 S.W.2d 980, and that line of authorities holding that a deed to a mineral interest in part of a tract covered by an oil and gas lease, when the deed further recites that it covers and includes the proportionate interest of all the royalty due to be paid under the terms of the existing lease, operates to convey the same percentage interest in the royalty from all the land covered by the lease. In the Hoffman case the deed purported to convey a one-half interest in the minerals in and under a 90-acre tract which was a part of a 320-acre tract covered by an oil and gas lease, and provided that it " 'covers and includes one-half of all the oil royalty and gas rental or royalty due to be paid under the terms of said lease.' " The court said that there was but one lease, and it covered 320 acres, including the 90-acre tract, and that it appeared from the deed that it was the intention of the grantor to convey one-half of the royalty under the entire lease. In Olvey v. Jones the deed conveyed a one-half interest in the minerals in and under a tract described by field notes covering 83.23 acres, the description concluding as follows: " 'Containing 55 acres, more or less' * * * 'and includes any excess, if any.' " There was the same provision as in the deed in the Hoffman case as to including one-half of all the royalty to be paid under the existing lease. The court held that the grantees owned one-half of all the royalty payable under the lease on the 83.23 acres, citing Hoffman v. Magnolia Petroleum Co.

There are two notable distinctions between the deeds before the courts for construction in the cited cases and the presently considered deeds. In those cases the conveyances included percentages of " 'all of the oil royalty, and gas rental or royalty due and to be paid under the terms of said lease' "; while in the conveyances in the instant case the clauses relied upon by appellees purport to include percentages of "all of the oil royalty and gas rental or royalty due and to be paid under the terms of said lease, *in so far as it covers the above described land.*" (Emphasis ours.) Another difference is that in the cited cases the deeds had no special intention clauses, limiting the grants to acre interests, as are found in the deeds in our case. Had there been a clause in the deed involved in Olvey v. Jones, supra, to the effect that it was the intention of the grantor to sell and of the grantee to buy an undivided 27.5 acre interest in the tract described as 83.23 acres, but thought to contain 55 acres, and if the excess, if any, above 55 acres had not been specifically conveyed, and had it further provided that the conveyance included one-half of all of the oil royalty and gas rental or royalty due and to be paid under the terms of said lease, *in so far as it covers the above described land,* the case would have been similar to ours.

We do not think our holding is in conflict with the decisions referred to. The instruments here involved are essentially different from those considered in the cases relied upon by appellees, and those holdings are therefore not authoritative in construing the deeds now before this court.

The judgment is reversed and here rendered that appellant recover the $867.42 in the registry of the court, representing the royalty payments now in dispute, and that he recover 6.384/226.88ths of the minerals under the 226.88-acre tract, subject to the terms of the existing lease thereon, including 6.384/226.88ths of the one-eighth royalty payable under the lease.

RENFRO, J., not participating.