JACK WILES AND MILDRED WILES, ET AL.,[1] PETITIONERS *v.*
COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 146–71—149–71. Filed November 21, 1972.

[1] Cases of the following petitioners are consolidated herewith: Michael A. Wiles Trust, Jack Wiles, Trustee, docket No. 147–71; Karen D. Wiles Trust, Jack Wiles, Trustee, docket No. 148–71; and Philip B. Wiles Trust, Jack Wiles, Trustee, docket No. 149–71.

*Henry Schwartz II*, for the petitioners.
*Kemble White*, for the respondent.

SIMPSON, *Judge:* The respondent determined the following deficiencies in, and additions to, the petitioners' income tax:

| Petitioner | Year | Deficiency | Sec. 6653 (a) [2] addition |
|---|---|---|---|
| Jack and Mildred Wiles | 1965 | $10,557.62 | $527.88 |
|  | 1966 | 12,895.76 | 644.79 |
|  | 1967 | 13,653.80 | 682.69 |
| Michael A. Wiles Trust | 1965 | 9.99 | |
|  | 1966 | 61.15 | |
| Karen D. Wiles Trust | 1965 | 9.99 | |
|  | 1966 | 61.15 | |
| Philip B. Wiles Trust | 1965 | 9.99 | |
|  | 1966 | 61.15 | |

Most of the issues have been settled, and the issues remaining to be decided are: (1) Whether the petitioners may deduct as rent certain payments made for the use of property which they had given in trust for their children and which had then been leased back to them, and (2) whether the petitioners are taxable on trust income which was used to make payments on a mortgage for which they were liable.

### FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so found.

The petitioners, Jack and Mildred Wiles, husband and wife, maintained their legal residence in Tyler, Tex., at the time their petition was filed in this case. They filed their joint Federal income tax returns for the years 1965, 1966, and 1967 with the district director of internal revenue, Dallas, Tex.

The petitioners, Michael A. Wiles Trust, Karen D. Wiles Trust, and Philip B. Wiles Trust, maintained their main offices in Tyler, Tex., at the time their petitions were filed in this case. Each filed its fiduciary income tax returns for the years 1965 and 1966 with the district director

[1] All statutory references are to the Internal Revenue Code of 1954.

of internal revenue, Dallas, Tex. Dr. and Mrs. Wiles will hereinafter be referred to as the petitioners.

On February 3, 1959, the petitioners purchased approximately 4 acres of land in Tyler, Tex., for a consideration of $37,000. Of this amount, $10,000 was paid in cash, and the balance was evidenced by a note executed by Dr. and Mrs. .Wiles and payable in monthly installments. In the early part of 1961, the petitioners improved the northwest portion of the tract of land by constructing a one-story medical office building and by paving a parking lot and landscaping the area. The total cost of these improvements was $50,777, and on October 24, 1961, the petitioners executed a deed of trust covering the improved portion of the tract to the First Federal Savings & Loan Association of Tyler (First Federal) to secure a loan of $35,000. Dr. Wiles has occupied all or part of the medical office building for his professional offices since it was completed; and during the taxable years 1965, 1966, and 1967, he was the sole occupant of such building.

Late in 1962, construction began on a second building to be located immediately behind the first building and attached to it by a covered walkway. The building shell and one office were completed in 1962 at a cost of $20,000. Such office was rented to Glen C. Dyer, D.D.S., for a term of 5 years beginning January 1, 1963, at a rate of $244 per month.

On January 2, 1963, the petitioners executed three instruments with respect to the medical buildings, the paved parking area, and the portion of the land on which they were located. The interpretation of these instruments is a source of controversy in this case. The instruments are exactly the same except that the name of the minor involved in each one is different. The minors involved are the petitioners' children, Michael A., Karen D., and Philip B. Wiles, and as the instruments are so similar, the findings with respect to the Michael A. Wiles instrument are applicable to the other instruments.

The Michael A. Wiles instrument provided that the petitioners:

For and in consideration of Ten Dollars ($10.00) cash in hand paid, receipt of which is hereby acknowledged, and in further consideration of their love and affection for their son, Michael A. Wiles, and their desire to assure his maintenance, support and education, and in consideration of the assumption by the grantee herein of certain indebtedness, as hereinafter specified, hereby bargain, grant, sell and convey unto Michael A. Wiles, * * * an undivided one-third (⅓) interest in and to the * * * [subject property]

*　　　*　　　*　　　*　　　*　　　*　　　*

To HAVE AND To HOLD the aforesaid undivided one-third interest in and to the above described land, and improvements * * * unto the said Michael A. Wiles and to his successors or successor, IN TRUST, upon the uses and for the purposes hereinafter set out, SUBJECT, however, to the aforesaid liens.

1. The grantor herein, solely in his capacity as trustee of the trust hereby created, and not individually, hereby assumes payment of one-third of all indebtedness and liabilities secured by the aforesaid liens.

2. (a) The trust hereby created shall be known as the "Michael A. Wiles Trust."

(b) Said Michael A. Wiles was born August 14, 1948. He is the son of said Jack Wiles and Mildred Wiles.

\* \* \* \* \* \* \*

4. \* \* \* trustee shall hold, manage, control, invest, and reinvest the corpus \* \* \* in such manner as trustee deems proper; provided however, that so long as any such trust exist, have as its corpus, or a part thereof, any interest in the above described property and such interest be encumbered to secure payment of the above-mentioned indebtedness, trustee shall, to the extent necessary, first, out of the gross income of such trust, and next, out of the corpus thereof, discharge, as and when the same shall currently become due and payable, one-third of all indebtedness, principal and interest, and other liabilities the payment of which be secured by the above-mentioned liens, or for the payment of which said Jack Wiles and Mildred Wiles be jointly or severally liable. Nothing herein shall, however, impair trustee power of sale, which shall be continuous, regardless of the existence of such indebtedness.

\* \* \* \* \* \*

12. If \* \* \* original trustee, Jack Wiles, ceases \* \* \* to be a trustee, then settlors hereby appoint as successor trustee the Peoples National Bank of Tyler, Texas \* \* \*

The original trustee was not to receive compensation, but the successor trustee was to receive reasonable compensation. The trustee had the power to construe the instrument and settle claims against the trust. Other provisions of the instrument provided that the trust was not to be used to discharge the settlors' obligation of support to the beneficiary and that the income of the trust was to be accumulated until the beneficiary reached 30 years of age, subject to the above-mentioned liens and except in certain emergency situations. The existence of such an emergency was to be determined by the trustee. If he determined that an emergency existed, he was authorized to make distributions at his discretion, except that no distribution could be made if it impaired the trustee's ability to make the payments on the indebtedness as such payments became due. Another provision provided that the income was not to be subject to the claims of the beneficiary's creditors. Still other provisions provided that when the beneficiary reached 30 years of age, the corpus (including accumulated income) was to be distributed to the beneficiary, or if the beneficiary did not live to that age, to certain persons other than the grantors or to charity.

In apparent conflict with these provisions paragraph 16 provided that the trust:

shall be irrevocable and in existence for a period of ten (10) years and ten (10) days from date of inception January 1, 1963 \* \* \*. At the termination of trust, corpus is to revert back to grantor.

Paragraph 23 provided that any capital gains realized if the property was sold were to be distributed to the grantor at the termination of the trust, 10 years and 10 days after its inception. In all, the instrument contained a granting clause, an habendum clause, and 23 numbered paragraphs, 22 of which referred to "trust" or "trustee."

On the same day that such instruments were executed, Dr. Wiles, as lessee, entered into a 10-year lease agreement with himself as trustee of the Michael A. Wiles Trust, the Karen D. Wiles Trust, and the Philip B. Wiles Trust. Under the terms of such agreement, he leased the first building at an annual rental of $10,500. During 1964, another office in the second building was completed, and it was rented to Dr. Smith during the years 1965, 1966, and 1967 at $225 per month.

On November 13, 1964, a complaint was filed in Texas State court, wherein the petitioners sought to have the instruments of January 2, 1963, reformed and amended, so as to declare Dr. Jack Wiles grantee and trustee. On December 21, 1964, the court appointed a guardian *ad litem* for the Wiles children, and he subsequently filed a general denial. On December 23, 1964, the court entered judgment as follows:

And it appearing to the Court that each of said Trust Agreements and conveyances was made, executed and delivered in the form in which they appear of record through mistake, accident and error, and that it was the true intention of the parties thereto that the said Jack Wiles and Mildred Wiles convey an undivided one-third (⅓rd) interest by each of said conveyances to Jack Wiles as Trustee for the benefit of the beneficiaries of such trusts named therein, in accordance with the terms, provisions and uses set out in said Trust Agreements, and it is accordingly ORDERED, ADJUDGED and DECREED that said Trust Agreements and conveyances as hereinabove set out are each and all of them reformed and revised to the extent that hereafter Jack Wiles in his capacity as Trustee shall be the Grantee of the undivided interest conveyed by each of said conveyances * * *

The attorney who filed the complaint was a member of the firm which ordinarily represents First Federal, and on December 31, 1964, Dr. Wiles, as trustee of the Michael A. Wiles Trust, the Karen D. Wiles Trust, and the Philip B. Wiles Trust, executed a deed of trust with respect to the property held by the trusts. Such mortgage secured a note of $20,000 payable to First Federal.

In 1967, a third office was opened in the second building and rented to Morgan R. Chapman, Jr., D.D.S., for a period of 5 years beginning July 1, 1967, at a monthly rental of $185.

During 1965, 1966, and 1967, Dr. Wiles collected rents of $5,628, $5,628, and $6,740, respectively, from the tenants of the second building. During these same years, he did not make any payments designated as rent to the trusts, nor did he remit the rents collected from the other tenants to the trusts. However, in such years, he did make mortgage and tax payments on the trust property, deposited funds in

bank and stock accounts for his children, paid insurance, utility, and yardwork bills with regard to the trust property, purchased property for his children, and paid for the completion of Dr. Chapman's office space. There was no apparent schedule as to when these amounts would be paid, and these amounts were paid out of both Dr. Wiles' personal account and his business account. During 1965, 1966, and 1967, such amounts totaled $21,104.12, $20,946.61, and $19,034.19, respectively. During such years, the mortgage indebtedness against the trust property was decreased by $3,953.59, $4,375.44, and $4,452.49, respectively. Separate accounting records were not maintained for trust transactions.

On January 19, 1970, after the petitioners' rental expense deduction in the year 1966 was questioned by an agent of the respondent, Michael A. Wiles, who was then 21 years of age, individually and as next of friend of Karen D. and Philip B. Wiles, filed a complaint against the petitioners in Texas State court. The complaint sought to have the 1964 Texas court judgment vacated; to have fee simple title to the transferred property vested in himself, his sister, and his brother; and to obtain an accounting from Dr. Wiles. On February 3, 1971, upon the plaintiffs' motion, the State court severed the accounting claim and trial was held the same day. The defendants introduced no evidence, conducted no cross-examination, and presented no arguments in opposition to the complaint. The court rendered a bench opinion setting aside the 1964 judgment because there had been no evidence presented to show that the guardian *ad litem* had fully litigated the 1964 case. The court also found that, based on the record before it, the instruments of January 2, 1963, were deeds which vested fee simple title in the children and that the deeds were for valuable consideration because the grantees assumed certain indebtedness. In a judgment entered the same day, the court said that the instruments were deeds because of the application of the rules of construction that an instrument should be construed to transfer the largest estate which can be passed thereunder and that the granting clause will prevail over all other provisions. Moreover, the court said that under each instrument the equitable and legal title vested in one person and the application of the doctrine of merger required that fee simple title pass to the children.

On their Federal income tax returns for 1965, 1966, and 1967, the petitioners claimed rental expense deductions of $10,500, $10,500, and $12,000, respectively, which were disallowed by the respondent as not being ordinary and necessary business expenses. The respondent further determined that as a result of the mortgage payments made with the trust income in 1965, 1966, and 1967, the petitioners realized unreported income.

The respondent also determined certain deficiencies in the 1965 and 1966 Federal income taxes of the trust petitioners which are not in issue. He has conceded that the income of the trusts should be reduced to the extent the Court finds that the rental expenses claimed by Dr. and Mrs. Wiles are not allowable and that the trusts are entitled to a deduction to the extent the Court finds that Dr. and Mrs. Wiles are taxable on the trust income used to discharge their indebtedness.

## OPINION

The issues to be decided are: (1) Whether the petitioners may deduct as rent the payments which Dr. Wiles made to or for the trusts for the use of his offices, and (2) whether the petitioners are taxable on trust income which was used to make mortgage payments.

The petitioners basically contend that their minor children are the owners in fee simple of the medical buildings; that Dr. Wiles had a legal obligation to pay such owners a reasonable rent; and that the payment of such rent was an ordinary and necessary business expense. They further contend that the minor children assumed the mortgage indebtedness and that its partial payment, therefore, does not result in the taxation of income to the petitioners.

The respondent basically contends that the buildings were transferred to trusts for the benefit of the petitioners' minor children; that Dr. Wiles simultaneously leased back his office space; and that because the conveyance and leaseback had no business purpose, the petitioners are not entitled to a deduction for rental payments. He further argues that the petitioners remained primarily liable on the mortgage indebtedness and that the payment of such indebtedness is income to the petitioners.

The parties have based their contentions on what they perceive to be the property interests conveyed to the petitioners' children under the three similar instruments executed on January 2, 1963. Both parties agree that, in determining what interests passed to the children, we are not bound by either the 1964 Texas State court decision or the 1971 decision, and that we must, in effect, sit as a Texas court and apply what we find to be the Texas law after giving proper regard to relevant rulings of the Texas courts. Cf. *Commissioner* v. *Estate of Bosch*, 387 U.S. 456 (1967). We have carefully considered the Texas law, and we find that the instruments established trusts in which the petitioners had no reversionary interests.

Under Texas law, the first and paramount fact to be determined in construing an instrument of conveyance is the intention of the grantor gathered from the instrument as a whole (*Smith* v. *Allison*, 157 Tex. 220, 301 S.W. 2d 608 (1956); *Minchen* v. *Hirsch*, 295 S.W. 2d 529 (Tex.

Civ. App. 1956)), and that intention may restrict the words of the granting clause (*Associated Oil Co.* v. *Hart*, 277 S.W. 1043 (Tex. Comm. App. 1925); *Sims* v. *Woods*, 267 S.W. 2d 571 (Tex. Civ. App. 1954), reversed on another point 154 Tex. 59, 273 S.W. 2d 617 (1955)). If the instrument does not clearly disclose such intention or if the language is susceptible of more than one interpretation, extrinsic evidence may be used in attempting to ascertain such intention (*Hedick* v. *Lone Star Steel Co.*, 277 S.W. 2d 925 (Tex. Civ. App. 1955)), and great latitude is given with respect to the extrinsic evidence which is admitted (*Windsor* v. *Loyd*, 191 S.W. 2d 521 (Tex. Civ. App. 1945); *Gulf View Courts* v. *Galveston County*, 150 S.W. 2d 872 (Tex. Civ. App. 1941)). Only if the intention is still unascertained after the introduction of such evidence will the technical rules of construction be applied. *Hedick* v. *Lone Star Steel Co.*, *supra*; *Peterson* v. *Holland*, 189 S.W. 2d 94 (Tex. Civ. App. 1945). As the instruments are the same, except for the name of the minor child involved in each, we need examine only one instrument.

After examining the inartfully drawn instrument executed with regard to Michael A. Wiles, we can say conclusively that the grantors intended to convey the property in trust, even though the granting clause by itself did not indicate that a trust was intended. The habendum clause states that the land is to be held in trust and the 23 subsequent paragraphs of the instrument enumerate the various provisions of the trust and make it clear that the grantors intended to separate the legal and equitable title to the property. To ignore these paragraphs, which constitute the vast majority of the instrument, would be to disregard the clear intent of the grantors. Paragraph 2 of the instrument refers to "The trust hereby created." Paragraph 12 refers to Dr. Wiles as the original trustee, and other paragraphs are concerned with trustee compensation and succession. Paragraph 4 grants the trustee broad powers, including the power of sale, while later paragraphs limit the situations in which income may be distributed to Michael and clearly indicate that the grantors did not intend to convey fee simple title to Michael. Indeed, until Michael reached 30 years of age, he was to have no absolute right to have any income distributed to himself. Furthermore, Michael's interest was not to be subject to the claim of creditors—an impossibility if Michael was to hold both legal and equitable title. Under these circumstances, we find that the grantors intended to form a trust with Dr. Wiles as trustee, and we interpret the "unto the said Michael A. Wiles and to his successors or successor, IN TRUST" language of the habendum clause to mean simply that the property was conveyed in trust for the benefit of Michael.

Even if we were to find that the intent of the grantor was not conclusively apparent from an examination of the instrument itself, the contemporaneous lease agreement executed by Dr. Wiles, as trustee of the Michael A. Wiles Trust, the Karen D. Wiles Trust, and the Philip B. Wiles Trust, would be admissible to show such intent (see *Hedick* v. *Lone Star Steel Co., supra;* cf. *Pacific Mutual Life Insur. Co.* v. *Westglen Park, Inc.,* 160 Tex. 1, 325 S.W. 2d 113 (1959)), and we would reach the same conclusion—a trust with Dr. Wiles as trustee was established. Thus, in determining whether a trust was established and who was trustee, we are not concerned with the technical rules of construction. *Hedick* v. *Lone Star Steel Co., supra; Peterson* v. *Holland, supra.* The State court's consideration in 1971 of such rules without first determining what was the grantors' intent, therefore, was not supported by Texas law. Furthermore, as Dr. Wiles was trustee, the doctrine of merger was inapplicable.

Although we have been able to determine that it was the intent of the grantors to create a trust with Dr. Wiles as trustee, we cannot ascertain what was the grantors' intent with respect to the disposition of the trust corpus when the trust terminated. One set of provisions provides for the distribution of the corpus to the grantors; while another set provides for the distribution to the beneficiary, if he is alive, and to persons other than the grantors or charity, if the beneficiary is not alive. Because we cannot reconcile these two sets of provisions, we must resort to the rule of construction which provides that conflicts will be resolved in favor of the grantee. *McGuire* v. *Bruce,* 332 S.W. 2d 110 (Tex. Civ. App. 1959) ; *Hedick* v. *Lone Star Steel Co., supra.* We, therefore, find that the grantors had no reversionary interest in the trust and that the grantees, if alive at termination of the trust, would receive the corpus distribution.

The issue now to be decided is whether "rental" payments made by the petitioners are deductible as ordinary and necessary business expenses. Section 162(a) allows a deduction for certain business expenses including "rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity." However, "The mere transfer of legal title to property * * * is not conclusive for Federal income tax purposes, for the 'sale' that lacks economic reality and business purpose, and the 'gift' that leaves the donor with substantially the same control over the property that he had before, will simply be disregarded" for the purpose of section 162(a). *Sidney W. Penn,* 51 T.C. 144, 149–150 (1968) ; see *Van Zandt* v. *Commissioner,* 341 F. 2d 440 (C.A. 5, 1965), affirming 40 T.C. 824 (1963), certiorari denied 382

U.S. 814 (1965); *W. H. Armston Co.* v. *Commissioner,* 188 F. 2d 531 (C.A. 5, 1951), affirming 12 T.C. 539 (1949); *Irvine K. Furman,* 45 T.C. 360 (1966), affirmed per curiam 381 F. 2d 22 (C.A. 5, 1967). This general principle, which is followed in leaseback cases such as the present one, was originally outlined by the Supreme Court in a case involving the taxability of trust income, as follows:

Technical considerations, niceties of the law of trusts or conveyances, or the legal paraphernalia which inventive genius may construct as a refuge from surtaxes should not obscure the basic issue. That issue is whether the grantor after the trust has been established may still be treated * * * as the owner of the corpus. See *Blair* v. *Commissioner,* 300 U.S. 5, 12. In absence of more precise standards or guides supplied by statute or appropriate regulations, the answer to that question must depend on an analysis of the terms of the trust and all the circumstances attendant on its creation and operation. And where the grantor is the trustee and the beneficiaries are members of his family group, special scrutiny of the arrangement is necessary * * * [Fns. omitted. *Helvering* v. *Clifford,* 309 U.S. 331, 334–335 (1940).]

Although "more precise standards or guides" have been established with regard to the inclusion of trust income in the income of the grantor on the grounds of his dominion and control over the trust (see secs. 671–677), those standards have "no application in determining the right of a grantor to deductions for payments to a trust under a transfer and leaseback arrangement." S. Rept. No. 1622, 83d Cong., 2d Sess., p. 365 (1954). The principle of *Clifford* remains applicable to determine the right to deductions in such situations. *Sidney W. Penn, supra.*

After carefully examining *Clifford* and the other cases applying the *Clifford* rationale to the sale or gift and leaseback situations, we find that for purposes of section 162(a), Dr. Wiles was not "required," within the meaning of that section, to make the payments to the trust in order to continue to use the office building. Before and after the transfer, Dr. Wiles conducted his medical practice in the first building. Indeed, the building was obviously built for that purpose. As sole trustee, Dr. Wiles had and exercised such broad powers that he gave up very little control over the property. He had the power to "hold, manage, control, invest, and reinvest" the corpus. He also had the power to sell the corpus and, in his discretion, to make corpus distributions in emergency situations. He further had the power to construe the instrument and to settle claims against the trust. As trustee, he mortgaged the trust corpus, supervised the completion of the second building, and rented to others the new offices in the second building.

The informality of the "rent" arrangement is also indicative of the fact that the petitioners retained actual control of the property. Dr. Wiles testified that he determined the amount of the monthly rent which he paid during 1965, 1966, and 1967, but his determination to increase the rental from that specified in the lease was never put in

writing. The payments were never labeled rent payments, and they varied in amount without apparent reason. Moreover, they appear to have been sporadic, and as often as not, they were made from Dr. Wiles' personal, rather than business, account. Finally, the claimed payments, which totaled $10,500 in 1965 and 1966, and $12,000 in 1967, constituted an amount about equal to the tax, utility, mortgage, and other similar payments, which the petitioners would have had to make on their own behalf if there had been no trusts. Indeed, by the terms of the trust instrument, the trust income had to be applied to the payment of the mortgage which the petitioners had previously executed. In essence, the petitioners retained the power to control the property and exercised such power.

We realize that the petitioners' power was subject to certain fiduciary obligations, but any dilution in power effected by such obligations is not deemed significant where:

as a result of the terms of the trust and the intimacy of the familial relationship * * * [the taxpayer has] retained the substance of full enjoyment of all the rights which previously he had in the property. That might not be true if only strictly legal rights were considered. But when the benefits flowing to him indirectly through * * * [other members of the family group] are added to the legal rights he retained, the aggregate may be said to be a fair equivalent of what he previously had. * * * [*Helvering* v. *Clifford*, 309 U.S. at 336.]

*Sidney W. Penn*, 51 T.C. at 153. Furthermore, the failure of the petitioners to retain a reversionary interest does not show the petitioners have failed to retain the substance of full enjoyment, where, as here, they have retained and exercised such broad powers of administration over the property. See *Sidney W. Penn, supra*; cf. *W. H. Armston Co. v. Commissioner, supra.*

The petitioners contend, nonetheless, that the existence of other tenants shows that the transfer had economic reality and that the respondent has implicitly recognized such reality by not taxing the rental payments made by the other tenants to the petitioners. The existence of other tenants in the second building does not change the fact that the petitioners retained actual control of the trust corpus—nor does it clothe the transfer with economic reality for the purposes of section 162(a). Furthermore, the validity of trust for income purposes is not determinative of its validity for the purposes of section 162(a). As pointed out earlier, the Senate Finance Committee report makes it clear that Congress intended the standards of sections 671 to 677 to be applicable in determining whether income is to be attributed to the grantor of a trust, but not to be applicable to whether "rental" payments made by a grantor in a leaseback are deductible. S. Rept. No. 1622, *supra* at p. 365. In *Van Zandt* v. *Commissioner*, 341 F. 2d at 443, the Fifth Circuit stated:

Although the question is not before us, we recognize that from the standpoint of taxability of income of the trust, not deductions which a payor of that "income" may take, this was a perfectly valid trust. It met not only the minimum but all of the statutory tests so that its income will be taxed to it, not the settlors. Nonetheless, the fact remains that there was no real business purpose served by this intricate transaction. * * *

We also reject the petitioners' contention that the present case is distinguishable from previous leaseback cases because the transfer in this case was for consideration—the assumption of one-third of the mortgage indebtedness by each trust. As will be discussed later, the trusts did not assume the indebtedness. Furthermore, there is nothing in the prior cases to indicate that the assumption of a mortgage would vary the result where the grantors retain actual control of the property and the "rental" payments must be used to make the mortgage payments.

The cases of *Brown* v. *Commissioner*, 180 F. 2d 926 (C.A. 3, 1950), reversing 12 T.C. 1095 (1949), certiorari denied 340 U.S. 814 (1950); *Alden B. Oakes*, 44 T.C. 524, 529 (1965); and *Brooke* v. *United States*, 468 F. 2d 1155 (C.A. 9, 1972), on which the petitioners rely, are distinguishable in that each involved what the Court found to be an independent trustee. See *Sidney W. Penn*, 51 T.C. at 153–154. In the first two cases, the trustee was a bank, and in the last case, a guardianship under Montana State law was found to constitute a State court-administered trust. In the present case, neither a bank nor a court-administered guardianship is involved, and as earlier discussed, the grantor-trustee retained actual control of the trust corpus. Thus, the petitioners are not entitled to rental deductions for the years 1965, 1966, and 1967.

The final issue to be decided is whether the petitioners realized income when trust income was used to reduce the mortgage indebtedness on the trust property. It is clear that if trust income is used to pay a debt for which the grantor is primarily and directly liable, the grantor is treated as a beneficiary of the trust to the extent that the income is so used. Sec. 677(a)(1); sec. 1.677(a)–1(d), Income Tax Regs.; see *Douglas* v. *Willcuts*, 296 U.S. 1 (1935); *Loeb* v. *Commissioner*, 159 F. 2d 549 (C.A. 7, 1946), affirming 5 T.C. 1072 (1945); *Ralph W. Conant*, 7 T.C. 453 (1946). Thus, this Court has held that where stock is transferred to a trust and the trustee is directed to pay the debt, the payment of the debt results in the grantor being taxed as a beneficiary of the trust even though the stock, which had been pledged as security for the debt, far exceeds the debt in value. *Lucy A. Blumenthal*, 30 B.T.A. 591 (1934), revd. 76 F. 2d 507 (C.A. 2, 1935), reversed per curiam 296 U.S. 552 (1935); see *Douglas* v. *Willcuts, supra*. However, the Fifth Circuit has refused to treat the grantor as a trust beneficiary

in situations where the indebtedness was incurred contemporaneously with the transfer to the trust. *Edwards* v. *Greenwald*, 217 F. 2d 632 (C.A. 5, 1954); *Hays' Estate* v. *Commissioner*, 181 F. 2d 169 (C.A. 5, 1950), reversing 12 T.C. 210 (1949); see *Barber* v. *United States*, 251 F. 2d 436, 438 (C.A. 5, 1958); 6 Mertens, Law of Federal Income Taxation, sec. 37.47 (1968).

In the present case, the original mortgage indebtedness was not created contemporaneously with the transfer; it was created in 1961 when the first medical building was constructed, and the property was not transferred in trust until 1963. Furthermore, although the granting clause in the trust instruments stated that the conveyance was subject to "assumption * * * of certain indebtedness, as hereinafter specified," no "hereinafter" provision of any of the instruments provided for such assumption. Rather, these provisions treat the debt as an encumbrance of the income and corpus of the trust. Thus, the habendum clause of each instrument stated that the transfer was subject to the indebtedness, and paragraph 1 provided that the trustee, in his capacity as trustee, would make the mortgage payments. Paragraph 4 stated that the transfer was encumbered to secure payment of the indebtedness out of the income and corpus of the trust, and later paragraphs provided that the distributions to the beneficiary could be made only if they would not impair the ability of the trustee to make the mortgage payments as they became due.

As there was no assumption of the original indebtedness in the trust instruments and as there is no evidence to indicate that the petitioners were ever released from their primary liability on the indebtedness, we find that the petitioners are taxable on the trust income which was used to pay the original debt. See sec. 677(a)(1); sec. 1.677(a)–1(d), Income Tax Regs.; *Lucy A. Blumenthal, supra.* As to the second mortgage, the grantors were never primarily liable, and we find that they are not taxable on payments made on such mortgage.

The petitioners contend, however, that in his deficiency notice, the respondent determined that the petitioners realized income because of an indebtedness paid by a trust in which they had a reversionary interest, that they have no such interest, and that, therefore, the respondent cannot now argue that they realized income even if there was no reversionary interest. We disagree. The deficiency notice gave the petitioners notice that the payment of the mortgage indebtedness by the trust was at issue, and the petitioners have not contended that they would have presented different evidence if the notice had not referred to a reversionary interest. Indeed, in light of the contradictory provisions in the trust instruments, it can hardly be said that the

302

notice misled the petitioners. Furthermore, the petitioners, in their brief, have had and used the opportunity to fully argue the legal questions involved in determining whether the payment of mortgage indebtedness by a trust resulted in income to the grantors. Therefore, we are free to decide the indebtedness issue under section 677(a)(1). Cf. *John R. Holmes*, 57 T.C. 430 (1971); *Tirzah A. Cox*, 56 T.C. 1270, 1277 (1971).

*Decisions will be entered under Rule 50.*