## J. D. WOODS ET AL V. S. W. SIMS

No. A-4717, Decided December 8, 1854.
Rehearing overruled January 12, 1955.
(273 S.W. 2d Series 617)

*Nelson, Montgomery, Robertson & Sellers,* of Wichita Falls, for petitioners.

The Court of Civil Appeals erred in construing the mineral deed to the different grantees in the amount of the royalty under the existing oil and gas lease on the property covered by the deed, because the true and correct construction of said deed conveys 25/200 of the royalty under the terms of said oil and gas lease. Benje v. Scharbauer. 152 Texas 447, 259 S.W. 2d 166; Loeffler v. King, 149 Texas 626, 228 S.W. 2d 201; Fleming v. Ashcraft, 142 Texas 41, 175 S.W. 2d 401.

*Cecil Murphy,* of Gainesville, for respondent.

MR. JUSTICE WALKER delivered the opinion of the Court.

This case involves the construction of three mineral deeds to determine the interests acquired by the respective grantees in the royalty payable under an existing oil and gas lease, the land having been surveyed after the execution and delivery of the deeds and found to contain more acreage than was apparently contemplated by the parties at the time the deeds were given.

On January 18, 1941, T. L. Miller and wife executed and delivered to S. W. Sims an oil and gas elase on a tract of land in Grayson County, the land being described in the lease as follows:

"200 acres of the S. Carmena Survey Abst. No. 262 Grayson County, Texas. Beginning, etc. . . . . (Metes and bounds description)."

The lease provided for the payment to lessors of the usual one-eighth royalties on oil and gas produced from the leased premises. The leasehold interest was acquired by Magnolia Petroleum Company, which farmed out to Kay Kimbell all of the land except the south 80 acres. It is stipulated that both Magnolia Petroleum Company and Kay Kimbell are producing oil from their respective parts of the land and that the lease is in full force and effect.

On January 18, 1941, T. L. Miller and wife also conveyed to S. W. Sims an undivided one-half interest in the oil, gas and other minerals in and under the land covered by the oil and gas lease. There is no question regarding the legal effect of this mineral deed.

In March, 1941, S. W. Sims executed three mineral deeds, the terms of which give rise to this controversy. The grantees in the three deeds are: (1) Pearl M. Kuehn, (2) Laura Harrison and F. E. Case, and (3) J. D. Woods. In each instrument the granting clause purports to convey an undivided 25/200 interest in the minerals, and the land description is the same as that used in the oil and gas lease. It is recognized by the parties that the provisions of the three deeds are substantially similar and that the instruments should be construed alike. The following are the material provisions of the deed to J. D. Woods:

"* * * * have granted, sold, conveyed, assigned and delivered, and by these presents do grant, sell, convey, assign and deliver unto the said Grantee, an undivided 25/200 interest in and to all of the oil, gas and other minerals in and under, and that may be produced from the following described land situated in Grayson County, Texas, towit:

(Land described as in oil and gas lease).
* * * *

"(It being the intention of the grantor to convey and of the Grantee to Purchase an undivided Twenty-five acre mineral interest in and to all of the oil, gas, and other minerals in and under the above described land.)

"Together with the right of ingress and egress at all times for the purpose of mining, drilling and exploring said land for oil, gas and other minerals, and removing the same therefrom.

"Said land being now under an oil and gas lease executed in favor of Magnolia Petroleum Company, it is understood and agreed that this sale is made subject to the terms of said lease and/or any other valid lease covering same, but covers and includes 25/200 of all of the oil royalty and gas rental or royalty due and to be paid under the terms of said lease, in so far as it covers the above described land.

"It is understood and agreed that 25/200 of the money rentals, which may be paid, on the above described land, to extend the term within which a well may be begun under the terms of said lease, is to be paid to the said Grantee; and, in event that the above described lease for any reason becomes canceled or forfeited, then and in that event, Grantee shall own 25/200 of all oil, gas and other minerals in and under said lands, together with a like 25/200 interest in all bonuses paid, and all royalties and rentals provided for in future oil, gas and mineral leases covering the above described lands.

"To have and to hold * * *."

R. C. Lipscomb and Harold D. Herndon each acquired one-fifth of the interest conveyed by the deed to Pearl M. Kuehn. Laura Harrison, who is now Laura Harrison Wiser, and F. E. Case executed an instrument stipulating that they were equal owners of the interests conveyed by the deed to them.

In 1951, after the execution and delivery of all of the above-mentioned deeds, the land covered by the oil and gas lease and the mineral deeds was surveyed and found to contain 226.88 acres. There then arose a controversy between the petitioners, J. D. Woods, Laura Harrison Wiser, R. C. Lipscomb and Harold D. Herndon, and the respondent, S. W. Sims, regarding the ownership of the minerals in place and also the ownership of the royalty payable under the existing lease. S. W. Sims contended that each of the three mineral deeds conveyed 25/226.88 of the minerals in place and a like interest in the royalty payable under the lease, and that petitioners together own 47.5/226.88 of such minerals and royalty. Petitioners, contending that each deed conveyed 25/200 of the minerals and royalty, insisted that they together own 47.5/200 of such minerals and royalty. Sinclair Oil & Gas Company, which was purchasing oil produced from a portion of the land, withheld the 6.384/226.88 of the royalty in dispute. Petitioners thereupon instituted suit against Sinclair for the royalty so withheld. Sinclair interpleaded S. W. Sims and deposited in the registry of the court the sum of $867.42, the amount of royalty in dispute, and was discharged. The suit then became an action between petitioners and respondent to determine the ownership of the fund and of future royalty payments.

The trial court held that the petitioners own an aggregate of 47.5/200 of the royalty payable under the lease, awarded to petitioners the $867.42 in the registry of the court, but held that petitioners were entitled to only 47.5/226.88 of the minerals in the event the oil and gas lease should terminate. The Court of Civil Appeals concluded that petitioners own an undiveded 47.5/226.88 interest in the minerals in place and a like interest in the royalty payable under the lease and rendered judgment that the respondent recover the $867.42, together with 6.384/226.88 of the minerals under the 226.88-acre tract, subject to the terms of the leas thereon, including 6.384/226.88 of the royalty payable under the lease. 267 S.W. 2d 571.

For the reasons set out below, we hold that each of the

mineral deeds vested in the respective grantees an undivided 25/200 interest in the royalty payable under the existing oil and gas lease. Petitioners have acquiesced in the holdings of the trial court and the Court of Civil Appeals with respect to their ownership of the minerals in place, and that question is not before this court and is not decided.

The first paragraph of each deed purports to convey an undivided 25/200 interest in the minerals in and under the land. Following the description of the land the intention clause states that the parties intend to convey "an undivided 25-acre mineral interest in and to all of the oil, gas and other minerals in and under the above described land." The next paragraph gives to the grantees the rights of ingress and egress for the purpose of operating the property for oil and gas. The third paragraph refers to the existing oil and gas lease and states that the sale covers and includes "25/200 of all of the oil royalty and gas rental or royalty due and to be paid under the terms of said lease, in so far as it covers the above described land." There then follows a paragraph relating to delay rentals payable under the lease and the ownership of the minerals in place and future bonuses, royalties and rentals in the event of termination of the lease. It will be noted that with the exception of the intention clause, all of the provisions of the instrument are consistent with the ownership by the grantee of an undivided 25/200 interest in the minerals in place and a like interest in the royalty payable under the lease.

■ There being no allegation of fraud, accident or mistake and no attempt by the parties to reform the mineral deeds, the court will give effect to the intention of the parties as expressed by the terms and provisions of the instruments. Generally the parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement, and this purpose should not be thwarted except in the plainest case of necessary repugnance. Even where different parts of the instrument appear to be contradictory and inconsistent with each other, the court will, if possible, harmonize the parts and construe the instrument in such way that all parts may stand and will not strike down any portion unless there is an irreconcilable conflict wherein one part of the instrument destroys in effect another part. Associated Oil Co. v. Hart, 277 S.W. 1043; Benge v. Scharbauer, 152 Texas 447, 259 S.W. 2d 166, and cases cited therein.

■ In the absence of a stipulation with respect to the royalty

payable under the lease, the conveyance of an interest in the minerals in place carries with it by operation of law the right to a corresponding interest in the royalty. It does not follow, however, that the interest in the royalty must be the same as the mineral interest conveyed where the instrument provides otherwise. Mineral deeds such as those involved in this case convey separate and distinct estates in the land, including (1) a permanent interest in the minerals in place which subsists during and beyond the life of the existing lease, and (2) an interest in the royalty to be due and payable under the lease. The first estate is determined by the first and fourth paragraphs, and the second estate is determined by the third paragraph. Accordingly, the instrument may convey an interest in the royalty which is larger or smaller than the interest conveyed in the minerals in place. Richardson v. Hart, 153 Texas 392, 185 S.W. 2d 563. It has long been settled that an instrument in such form conveying a certain interest in the minerals under a specific tract may through the provisions of the third paragraph vest in the grantee an interest in all royalty payable under a lease on a larger tract. Hoffman v. Magnolia Petroleum Company, (Com. App.) 273 S.W. 828. The terms of a mineral reservation in a deed may retain to the grantors one interest in the minerals in place and a larger interest in the royalty payable under a lease on the land. Benge v. Scharbauer, supra.

█ The intention clause in the J. D. Woods deed speaks of the mineral interest in the oil, gas and other minerals in and under the land. It relates to the first estate created by the deed, the permanent interest in the minerals in place which subsists during and beyond the life of the lease. There is nothing in the language to make the clause applicable to royalty payable under the lease. The third paragraph in plain and unambiguous language states that the sale covers and includes 25/200 of all of the oil royalty and gas rental or royalty to be paid under the terms of the lease. The parties could easily have made the intention clause applicable to the royalty or stated in the third paragraph that the sale covered and included an undivided 25-acre interest in the royalty, but this they failed to do. Since different estates in the minerals in place and in the royalty payable under the lease may be conveyed by the same instrument, and the intention clause relates to the minerals in place and contains no provision with respect to the royalty, there is no conflict between the intention and the succeeding stipulation with reference to the ownership of the royalty. Under the decisions mentioned above we must give effect to the intention of the parties as expressed in the third paragraphs of the deeds

and hold that the grantees acquired interests in the royalty payable under the existing lease equivalent to the fractional interests specified in these paragraphs.

The Court of Civil Appeals distinguishes this case from Hoffman v. Magnolia Petroleum Company, supra, on two grounds: (1) That the deed in the Hoffman case did not contain an intention clause, and (2) that the third paragraph of the mineral deeds in the present case purport to cover the specified fractional interests in the royalty payable under the terms of the lease "in so far as it covers the above described land," the quoted phrase not being in the deed involved in the Hoffman case. As pointed out above, the intention clauses in the deeds in the present case do not relate to the royalty payable under the lease. The inclusion of the quoted phrase in the deed in the Hoffman case would have produced a different result in that case, because the deed first conveyed an interest in the minerals in a described 90-acre tract and the question was whether the grantee acquired an interest in all royalty payable under the lease which covered a 320-acre tract of which the 90-acre tract was only a part. In the instant case, however, the tract described in the mineral deeds is the identical tract which is described in the oil and gas lease and which has since been found to contain 226.88 acres. The principles upon which the Hoffman case was decided are applicable to this case, and the meaning and effect of the third paragraphs of the deeds are not altered or impaired by the inclusion of the intention clause or the reference to the previously described land.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

Opinion delivered December 8, 1954.

Rehearing overruled January 12, 1955.