**R. S. RAINWATER, Appellant,**

v.

**Dana MILFELD et al., Appellees.**

No. 697.

Court of Civil Appeals of Texas, Corpus Christi.

Sept. 21, 1972.

Rehearing Denied Oct. 12, 1972.

Guittard, Henderson, Jones & Lewis, O. F. Jones, Victoria, for appellant.

Cullen, Carsner, Edwards, Williams & Stevenson, Donald A. Edwards, Victoria, for appellees.

## OPINION

SHARPE, Justice.

This appeal is from a judgment rendered after non-jury trial in favor of appellees that appellant take nothing by his suit for specific performance of an alleged contract involving the transfer of certain shares of stock in M & D Enterprises, Inc., a Texas Corporation.

R. S. Rainwater brought this suit against Dana Milfeld and Laurella Milfeld for specific performance of an alleged agreement under which the Milfelds were to transfer certain of stock to him. Appellant's amended original petition contained various allegations concerning transactions or negotiations involving the shares of stock belonging to the Milfelds in M & D Enterprises, Inc. However, it appears that the ultimate theory of recovery relied upon by appellant in the trial court and on this appeal is for specific performance of an alleged contract under which appellees, defendants below, were obligated to sell and deliver to appellant 5000 shares of the capital stock of M & D Enterprises, Inc.

The record reflects that M & D Enterprises, Inc., is a Texas Corporation whose principal business is the operation of the Holiday Inn Motel in Victoria, Texas. Originally, fifty percent of the corporation stock was owned by the Milfelds (Laurella J. and Dana) and the other fifty percent by some people named Dodson. The Dodsons, with the consent of the Milfelds, sold their said fifty percent stock ownership to appellant R. S. Rainwater, to the extent of 5%, and to his son William I. Rainwater to the extent of 45%. The motel was constructed in 1966 and apparently never performed as any of its stockholders thought it should. The record reflects considerable controversy and differences of opinion between the Milfelds and the Rainwaters concerning the operation of the motel. There were four directors of the corporation, the two Milfelds and the two Rainwaters.

Appellant asserts four points of error as follows:

"POINT OF ERROR NO. 1: The Trial Court erred in failing and refusing to file findings of fact and conclusions of law.

POINT OF ERROR NO. 2: The Trial Court erred in refusing to hold that Appellee's tender and Appellant's acceptance thereof was not a completed contract.

POINT OF ERROR NO. 3: The Trial Court erred in apparently holding that the Nosser offer was a conditional offer.

POINT OF ERROR NO. 4: The Trial Court erred in failing to compel Appellees to deliver 5,000 shares of the stock of the corporation to Appellant R. S. Rainwater."

It is apparent that appellant's principal contention is that contained in point number 4, which will first be discussed.

The bylaws of the corporation, relating to sale and transfer of shares of stock therein are as follows:

"ARTICLE FIVE—TRANSFER OF SHARES

SECTION 1. TRANSFER OF SHARES shall be made only on the

books of the corporation after compliance, among other things, with the succeeding paragraphs of this article, and upon the conditions contained in such succeeding paragraphs; and before a new certificate for shares shall be issued, the old certificate for shares properly endorsed shall be surrendered. Surrendered certificates of shares shall be cancelled and shall be attached to their proper stubs in the stock certificate book.

SECTION 2. NO SHARES OF THIS CORPORATION SHALL BE SOLD OR TRANSFERRED at anytime by any shareholder unless and until such shares shall have been first offered to the corporation and the other shareholders as hereinafter provided.

(a) Any shareholder desiring to sell his shares or any part thereof to any person, firm or corporation other than this corporation, shall first obtain a bona fide offer in writing from the proposed purchaser thereof stating the value or price in money at which such share or shares are proposed to be bought by such purchaser.

(b) Such shareholder shall then offer such shares proposed to be sold to the corporation at the price or value offered by the prospective purchaser as above provided and the corporation shall thereupon within five (5) days from the date such shares are offered to it, either accept or reject the offer in writing. Failure to accept in writing within such time shall be conclusively presumed and taken as a refusal of the offer.

(c) In the event the corporation refuses such offer, the shareholder desiring to sell shall offer such shares to the other shareholders of the corporation who shall each have the right and option to purchase such proportionate part of the shares offered for sale as the shares owned by each such purchasing shareholder bears to the total number of shares of the corporation issued and outstanding excluding therefrom the number of shares held by the shareholder offering to sell. Provided, further, that in the event any shareholder declines to purchase his proportionate part of the shares offered, each of the remaining shareholders shall have the right and option to purchase declining shareholders' proportionate part of the shares offered for sale in the proportion that the number of shares held by each such remaining shareholder bears to the total number of shares held by such remaining holders. The option to purchase hereby given to the remaining shareholders shall be at the price or value offered by the prospective purchaser as hereinabove provided, and such shareholders shall, within ten (10) days from the date any such shares are offered to them, either accept or reject the offer in writing. Failure of any shareholder to accept such offer in writing within such time shall be conclusively presumed and taken as a refusal of the offer.

(d) No shares of this corporation shall ever be sold to anyone other than the corporation or other shareholders of the corporation at a price of value less than at which they have been offered to the corporation and the other shareholders as hereinabove provided."

On September 3, 1970 the attorneys for the Milfelds wrote a letter reading in part as follows:

"M & D Corporation
c/o Mr. William I. Rainwater, President
Walnut Ridge, Arkansas
Re: Milfeld Stock
    M & D Corporation

Dear Mr. Rainwater:

This office represents Dana Milfeld and his brother L. J. Milfeld.

The Milfelds have received an offer from Mr. Abe Nosser to purchase their stock in M & D Corporation for $402,-500.00 as per the enclosed offer dated August 12, 1970. The terms are self-explanatory.

In accordance with the By-Laws of the corporation, the Milfelds are at this time offering their stock to the corporation on the same basis as Mr. Nosser's offer to purchase. This is in accordance with Article Five, Section 2 of the By-Laws. Under Subsection (b) of Section 2, the corporation has five days to accept or reject the offer in writing, and the corporation's failure to accept in writing shall be conclusively presumed and taken as a refusal of the offer.

In accordance with Section 2, Subsection (c), if the corporation refuses to purchase, then we tender the stock to R. S. Rainwater and William I. Rainwater individually upon the same terms. If the stock is not purchased under the terms set forth in the offer, then Dana J. Milfeld and his brother, L. J. Milfeld, will transfer their stock to Mr. Nosser in accordance with his offer.

By copy hereof as indicated below, we are offering William I. Rainwater individually as a stockholder and R. S. Rainwater individually the Milfeld stock.

Thank you for your attention thereto and awaiting your advices, we are

Yours very truly,

CULLEN, EDWARDS, WILLIAMS & STEVENSON

BY_____
    Richard D. Cullen

RDC: cmo

cc: Mr. William I. Rainwater
    Walnut Ridge, Arkansas

    Mr. R. S. Rainwater
    Walnut Ridge, Arkansas"

The offer of Mr. Abe Nosser, referred to in the last above-mentioned letter, was contained in a letter of August 12, 1970 reading as follows:

"Hillsboro, Mo. 63050
August 12, 1970

Mr. Dana J. Milfeld
Star Rt. West
DeSoto, Missouri 63020

Dear Mr. Milfeld:

I have reviewed your figures on the Holiday Inn at Victoria, Texas, and if such figures bear out your equity, I am prepared to make the following offer.

I will give a price of $402,500.00 total, which will consist of $287,500.00 in cash for your 30%, and a note due after 6 (six) months, for L. J. Milfeld's 20%, in the amount of $115,000.00.

I would not be interested in a position of less than the 50%.

Sincerely yours,

/s/ Abe Nosser
Abe Nosser

AN/cn"

The attorneys for the Rainwaters and for M & D Corporation replied to the Milfeld letter of September 3, 1970 by letter of September 11, 1970 reading as follows:

"Mr. Richard D. Cullen

Cullen, Edwards, Williams & Stevenson
Attorneys at Law
P.O. Box 2207
Victoria, Texas 77901

Re: M & D Corporation

Dear Mr. Cullen:

As attorney for M & D Corporation and Mr. William I. Rainwater and Mr. R. S. Rainwater, we have been furnished your letter of September 3, 1970, addressed to M & D Corporation and we make the following reply thereto.

(a) We feel that Mr. Nosser's offer is somewhat ambiguous in the we cannot ascertain clearly whether the price mentioned, $402,500.00, is a firm figure or not. It appears that it might be subject

to some renegotiation depending upon the final equity figures.

(b) On behalf of M & D Corporation the offer to purchase these shares at the $402,500.00 figure is rejected.

(c) On behalf of William I. Rainwater, who currently owns 45% of the outstanding shares of the stock of the corporation, and pursuant to Section 2 (c), Article Five of the Bylaws of the Corporation, such offer is rejected.

(d) Pursuant to said Article Five, Section 2(c) of the Bylaws of the Corporation, R. S. Rainwater, who currently owns 5% of the outstanding shares of the Corporation exercises his option to purchase an equal proportionate part of the shares offered for sale and hereby tenders the sum of $40,250.00 to your client in exchange for 5,000 shares of outstanding capital stock of the Corporation, which funds will be delivered to you or to your clients upon delivery to him of stock certificate properly endorsed and ready for transfer on the books of the corporation into Mr. Rainwater's name. Mr. Rainwater further elects not to exercise his option to purchase the remaining shares offered for sale by your clients.

Please advise when we may expect delivery of the certificate.

Yours very truly,

GUITTARD, HENDERSON, JONES & LEWIS

By /s/ O. F. Jones

OFJ:jr

Certified Mail
Return Receipt Requested
cc: Mr. Dana Milfeld
　　Mr. Laurella Milfeld
　　Mr. Wm. I. Rainwater
　　Mr. R. S. Rainwater"

It is apparent from the foregoing that the offer of the Milfelds to sell their fifty per cent stock ownership in M & D Enter-prises, Inc. for $402,500.00 was rejected by the corporation and by William I. Rainwater who owned 45% of the stock of the corporation; and that R. S. Rainwater, who owned 5% of the corporation stock, gave the Milfelds notice that he intended to exercise an option pursuant to Art. 5, Sec. 2(c) of the bylaws of the corporation to purchase an equal proportionate amount of the shares offered for sale, and tendered the sum of $40,250.00 to the Milfelds in exchange for 5000 shares of the corporation stock, and that R. S. Rainwater further elected not to exercise an option to purchase the remaining shares offered for sale by the Milfelds.

■ The position taken by appellant is that when any given amount of corporate stock is offered to the stockholders pursuant to Article 5 of the bylaws, any stockholder has the absolute right to buy his proportionate part of the offer without regard to whether the balance of the stock offered is purchased by the other stockholder(s) or himself. We do not agree.

Art. 2.22 of the Texas Business Corporation Act, Vol. 3A, V.A.T.S., provides in substance that certain restrictions may be imposed on the sale or disposition of its shares by a corporation, including restrictions reasonably defining pre-emptive or prior rights of the corporation or its shareholders of record to purchase any of its shares offered for transfer. The stockholders of a corporation, therefore, must consider the applicable provisions of the articles of incorporation or its bylaws in connection with the sale and transfer of shares of stock.

In connection with the question of the meaning of the bylaws of M & D Enterprises, Inc., relating to the sale and transfer of its shares of stock, we refer to the holding of our Supreme Court in City of Pinehurst v. Spooner Addition Water Co., 432 S.W.2d 515, 518 (Tex.Sup.1968) as follows:

"It is elementary that if there is no ambiguity, the construction of the written

instrument is a question of law for the Court. Myers v. Gulf Coast Minerals Management Corp., 361 S.W.2d 193 (Tex. Sup.1962). It is the general rule of the law of contracts that where an unambiguous writing has been entered into between the parties, the Courts will give effect to the intention of the parties as expressed or as is apparent in the writing. In the usual case, the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls. Woods v. Sims, 154 Tex. 59, 273 S.W.2d 617, 620 (1954). See generally: 3 Williston on Contracts § 610 (1936); Restatement of the Law of Contracts § 230 (1932). Generally the parties to an instrument intend every clause to have some effect and in some measure to evidence their agreement. As said in the Restatement, § 230, supra, '(the) standard of interpretation of an integration, except where it produces an ambiguous result, or is excluded by a rule of law establishing a definite meaning, is the meaning that would be attached to the integration by a reasonably intelligent person acquainted with all operative usages and knowing all the circumstances prior to and contemporaneous with the making of the integration, other than oral statements by the parties of what they intended it to mean.' . . ."

The unambiguous meaning of Article Five of the bylaws is that when an offer to sell stock is made to the corporation and alternatively to the stockholders, that if the corporation rejects the offer the accepting stockholders may buy the entire amount offered in proportion to their ownership. It is not reasonable to interpret the provision so that one stockholder may buy his proportionate share of the total and leave the balance of the offer unaccepted either by the other stockholders or himself.

The following sentence extracted from Article 5, Sec. 2(c) of the bylaws, when read in context with the preceding language of that section, demonstrates that the construction contended for by appellant is untenable.

". . . Provided, further, that in the event any shareholder declines to purchase his proportionate part of the shares offered, each of the remaining shareholders shall have the right and option to purchase declining shareholders' proportionate part of the shares offered for sale in the proportion that the number of shares held by each such remaining shareholder bears to the total number of shares held by such remaining holders. . . ."

■ It is clear in this case that the offer of the Milfelds was to sell their entire 50% of the stock in the M & D Enterprises, Inc. The Milfeld offer was based upon that of Mr. Abe Nosser to purchase the entire 50% of the stock owned by the Milfelds; and Mr. Nosser's offer expressly stated that "I would not be interested in a position of less than the 50%." The Milfelds' offer to sell their 50% of the stock was not accepted by the Rainwaters. The proposal made by appellant R. S. Rainwater amounts to no more than a counteroffer which was not accepted by the Milfelds.

It is obvious, from the testimony adduced at trial, that neither the Rainwaters nor the Milfelds wanted to place themselves in a minority position as far as their interests in the corporation were concerned. The previous relationship between the families, regarding the ownership of the stock indicates that none of the parties would jeopardize their fellow family member's standing in the control of the corporation by selling a portion of their stock and leaving the other in a minority position.

It is therefore apparent, and we so hold, that under a proper construction of the bylaws of the corporation, and in view of the offer of sale made by the Milfelds and its non-acceptance by the Rainwaters, the trial court properly denied specific performance of the alleged agreement relied upon by appellant.

Appellant's points do not present reversible error. Point 4 is not well taken for the reasons hereinabove stated. Point 3 is not well taken because the record does not support the contention that the trial court apparently held that the Nosser offer was a conditional offer. Point 2 is not well taken for the reasons given in connection with Point 4. The partial acceptance by appellant of appellees' offer to sell their 50% of the stock in the corporation would not, in the absence of acceptance by the Rainwaters of the remainder offered, constitute a completed contract upon which specific performance might be enforced.

Appellant's point one is also without merit. The record shows that although appellant timely made request that the trial court file findings of fact and conclusions of law, under Rule 296, Texas Rules of Civil Procedure, that Rule 297, T.R.C.P., was not complied with in that complaint was not made within five days of the failure to file the same.

The judgment of the trial court is affirmed.