**SUN OIL COMPANY (DELAWARE), Appellant,**

v.

**Martha Foster MADELEY et al, Appellees.**

No. 8585.

Court of Civil Appeals of Texas, Beaumont.

Nov. 20, 1980.

Rehearing Denied Dec. 31, 1980.

Robert C. McGinnis, Austin, for appellant.

William R. Choate, Houston, for appellees.

DIES, Chief Justice.

Plaintiffs below are successors in title to W. N. Foster and Keystone Mills Company, who as lessors entered into an oil, gas, and mineral lease and operating agreement with Sun Oil Company, as lessee, and defendant below, covering 640 acres of land in the Bricker Survey of Montgomery County, Texas. Plaintiffs brought suit for a declaratory judgment praying that such agreement required defendant to account to plaintiffs (as derivative lessors) for the royalties therein provided, and also for one-half of the seven-eighths working interest in oil, condensate, and gas (including casinghead gas).

Both sides filed motions for summary judgment; the trial court granted plaintiffs a partial summary judgment, from which order defendant perfects this appeal. In this opinion, the parties will be referred to as appellant and appellees.

At issue is the interpretation of Paragraph V of the 1932 lease which reads as follows:

"In addition to the royalty provided for in the preceding paragraph, Lessee shall deliver to Lessors in the proportions set out above, one-half *of the oil accruing to the seven-eights working interests* from that produced and saved from said land...."

From the date of the lease until August 1977, appellant paid to appellees not only one-half royalty of the working interest in oil (after deducting certain costs) but also one-half of the working interests on gas, casinghead gas, and condensate.

In 1977 appellant drilled deeper to new "horizons" on the leased land, discovered additional gas, and then sent the following letter (dated August 31, 1977) to appellees:

"Reference is made to the subject Division Orders and to the fact that you were credited with a working interest in the gas, including casinghead gas, in such Division Order. This is to advise you that you were incorrectly credited with such working interest, and that the interest credited to you thereon should have been credited to Sun Oil Company (Delaware).

"This letter will constitute our notice to you of the revocation of such Division Orders to the extent that you are credited with a working interest in gas, including

casinghead gas thereon. The entire .875000 working interest in gas, including casinghead gas, hereafter will be credited to Sun Oil Company. Appropriate adjustment for past overpayments is under the question of review by Sun at this time."

Both sides agree that there are no genuine issues of fact and that the agreement is unambiguous. All of appellant's points contest the court's construction of the agreement to include gas.

Appellant contends the agreement clearly limits appellees' working interest to "oil"; appellees say when you consider the entire instrument, how the parties themselves interpreted it, and the amendments thereto, the court's interpretation was correct. Appellant said in the trial court that its prior (over forty years) payments were a "gratuity," or "mistake."

Recently our Supreme Court said in *Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex.1979):

"Where a question relating to the construction of a contract is presented to this Court, we will consider the wording of the instrument, in the light of surrounding circumstances, apply the appropriate rules of construction and settle the meaning of the contract.... The primary object of courts in construing written contracts is to arrive at the intention of its parties. *Skelly Oil Co. v. Archer*, 163 Tex. 336, 356 S.W.2d 774 (1962)."

The same decision, *Harris v. Rowe*, supra at 306, wrote:

"No principle of interpretation of contracts is more firmly established than that great, if not controlling, weight should be given by the court to the interpretation placed upon a contract of uncertain meaning by the parties themselves. Courts rightfully assume that parties to a contract are in the best position to know what was intended by the language employed. *James Stewart & Co. v. Law*, 149 Tex. 392, 233 S.W.2d 588 (1950). The court should adopt the construction of the instrument as placed upon it by the parties unless there is clear language in the instrument indicating an intention to the contrary. *Col-Tex Refining Co. v. Coffield & Guthrie, Inc.*, 264 S.W.2d 462 (Tex.Civ.App.—Eastland 1954, writ ref'd)."

And in *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 157 (1951), Judge Calvert in writing for the Court said:

"In the interpretation of contracts, whether they be ambiguous in the sense that that term is here defined or simply contain language of doubtful meaning, the primary concern of the courts is to ascertain and to give effect to the true intention of the parties. To achieve this object the courts will examine and consider the entire writing, seeking as best they can to harmonize and to give effect to all provisions of the contract so that none will be rendered meaningless."

See also *Woods v. Sims*, 154 Tex. 59, 273 S.W.2d 617 (1954); *McMahon v. Christmann*, 157 Tex. 403, 303 S.W.2d 341 (1957); *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515 (Tex.1968); 2 C. McCormick & R. Ray, *Texas Law of Evidence* § 1681 (3rd ed. 1980); *Zeppa v. Houston Oil Co. of Texas*, 113 S.W.2d 612, 615 (Tex.Civ.App.—Texarkana 1938, writ ref'd). With these principles in focus, we shall try to construe this agreement.

*Surrounding Circumstances*: The land leased by appellant in this agreement was adjacent to a proven field, the Montgomery field. This somewhat unusual and generous agreement was negotiated by W. N. Foster, a Conroe attorney, with awareness of its value. At the time of the original agreement, condensate and gas (including casinghead gas) had only a fraction of modern values. See *Exxon Corporation v. Jefferson Land Co., Inc.*, 573 S.W.2d 829 (Tex.Civ. App.—Beaumont), writ ref'd per curiam, (Tex.1980) [not yet reported except in 24 Tex.Sup.Ct.J. 41 (Oct. 22, 1980)].

*Interpretation by and Conduct of the Parties*: As previously stated in this opinion, from the time of execution of the original lease in 1932, until the letter of August

1977, set forth above, appellant paid appellees one-half (½) royalty of the seven-eighths (⅞) working interest in not only the oil produced, but also the condensate and gas, including casinghead gas.

In December 1932, a memo from its general agent to one of Sun's lawyers was consistent with the trial court's interpretation of the agreement, and more importantly a title opinion of another of Sun's attorneys in its legal department, dated August 8, 1935, reflected ownership of casinghead gas as follows:

| "Sun Oil Company, | 21/48 W.I. |
| W. N. Foster, | 14/48 W.I. |
| Keystone Mills, | 7/48 W.I. |
| W. N. Foster, | 1/12 R.I. |
| Keystone Mills, | 1/24 R.I." |

On December 26, 1962, another attorney in Sun's legal department wrote an inter-office memorandum to the manager, Gulf Coast Division of Sun, as follows:

"This will confirm our discussion of our above mentioned lease, under which the lessors not only have a royalty but have a working interest under the special terms and provisions therein contained.

"We have been accounting to them for their interest in the working interest—as well as their royalty interest as to casinghead gas—and also gas-well gas and condensate as well as to oil for many years and we have concluded to continue as heretofore, based upon our consideration of the various aspects of the matter at this time. I am sending a copy of this memo to various others who have had occasion to give some consideration to this matter for their information and guidance."

*Entire writing*: Paragraph VIII provides, inter alia, that the costs of drilling were to be borne solely by appellant and that the cost and expense of producing and lifting the oil, including a six percent overhead factor, was to be charged to a joint account of lessor and lessees. The following clause is present in this paragraph:

"... and said account shall also reflect all receipts and revenues *for oil, gas and other minerals produced and saved hereunder*." (Emphasis supplied.)

Paragraph XVI, dealing with ad valorem taxes, provides:

"Any increase in ad valorem taxes assessed against the lands included in this lease by reason of the discovery and production of oil thereon, under this lease, shall be borne fifty-six and twenty-five hundredths (56.25) per cent by Lessors and forty-three and seventy-five [hundredths] (43.75) per cent by Lessee; provided, however, *that if the royalty and working interest shall be separately assessed, then Lessors shall pay all taxes on the royalty interest in and surface of said land, and one-half of the taxes accruing against the working interest shall be chargeable to the joint account provided for in Paragraph VIII hereof.* Ad valorem taxes on personal property and equipment on the lease shall be borne by the parties hereto in the proportion of their ownership of same as hereinabove provided." (Emphasis supplied.)

And perhaps most important of all in construing the entire writing to find the intent of the parties, in 1935 the parties amended the agreement. Paragraph IV of the instrument was amended to read:

"Lessee shall have free use of oil, gas, coal, and water from said land, except water from lessor's wells, for all operations, including drilling operations, hereunder *and the royalty on oil, gas and coal and the deliveries to lessors of one-half (½) of the oil, gas and other minerals accruing to the seven-eights (⅞ths) working interest, as more particularly provided hereafter, shall be computed after deducting any so used.* In lieu of using the identical fuel produced from the premises, lessee may use other fuel of no greater value and charge same against the production from the premises in accounting *for both the royalty and the working interest oil, gas and other minerals deliverable to lessors hereunder*; and if it is more economical to use electric or other power instead of using fuel from the premises for operations, including drilling operations, lessee may use such power

and charge the cost thereof against the production from the premises." (Emphasis supplied.)

We believe the trial court correctly interpreted and construed the agreement in question, and, so believing, overrule all of appellant's points of error, and affirm the trial court's "Final Judgment" granting appellees a partial summary judgment.

AFFIRMED.

## ON REHEARING

KEITH, Justice, dissenting.

The fuller light of an extended rehearing has converted the reluctance with which my acquiescence in the former affirmance of this appealed-from judgment was recorded into a conviction that it should be reversed; wherefore, this dissent from the present order overruling the appellant's motion for rehearing.[1]

A review of the original opinion reveals an obvious flaw in the reasoning of the Court. We said: "Both sides agree that . . . the agreement is unambiguous." (Opinion, at 2) Having made that determination—and it was a correct one—we departed from the well marked paths which should have guided us in our determination of the issues before us. We quoted at length from two cases and cited others, some of which probably were inapplicable as applied to an unambiguous instrument.[2]

Assuming the truth of our major premise—the instrument is unambiguous—we erred in turning immediately to "Surrounding Circumstances" and to "Interpretation by and Conduct of the Parties." (Opinion, at 4) Instead, we should have followed the teachings of one of the cases which we cited: *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex.1968):

"It is elementary that if there is no ambiguity, the construction of the written instrument is a question of law for the Court. *Myers v. Gulf Coast Minerals Management Corp.*, 361 S.W.2d 193 (Tex. Sup.1962). It is the general rule of the law of contracts that where an unambiguous writing has been entered into between the parties, the Courts will give effect to the intention of the parties as expressed or as is apparent in the writing. In the usual case, the instrument alone will be deemed to express the intention of the parties for it is objective, not subjective, intent that controls."

See also, *Middleton v. Broussard*, 504 S.W.2d 839, 841 (Tex.1974):

"Neither party contends that the above deed is ambiguous; therefore, our problem is to determine the parties' intent *by construing the language of the deed*. *Newsom v. Newsom*, 378 S.W.2d 842 (Tex.1964); *Benge v. Scharbauer*, 152 Tex. 447, 259 S.W.2d 166 (1953)."

The lengthy quotation from *Harris v. Rowe*, 593 S.W.2d 303, 306 (Tex.1979), found on page 3 of our opinion, omits the language in *Harris* which dictates a contrary result to that reached by the majority. The Court in *Harris* used this unequivocal language:

"Interpretation of a contract becomes a fact issue to be resolved by extrinsic evidence *only* when application of pertinent rules of construction leaves a genuine uncertainty as to which of two meanings is proper." (emphasis supplied)

Having determined, at least to my own satisfaction, that the reasoning of the original opinion is contrary to established legal principles, I turn now to a consideration of the question presented by the appeal:

Are plaintiffs entitled to be paid one-half of the seven-eighths working interest in oil, gas, condensate, and gas (including

1. The language has been borrowed from *Long v. Humble Oil & Ref. Co.*, 154 S.W.2d 925, 933 (Tex.Civ.App.—Galveston 1940, writ ref'd w.o. m.).

2. See, e. g., *McMahon v. Christmann*, 157 Tex. 403, 303 S.W.2d 341, 344 (1957), which holds in

no uncertain language that only when an instrument is susceptible of two meanings, "and only then, is the court authorized to receive extrinsic evidence to resolve the conflict or ambiguity."

casinghead gas), in addition to their reserved one-eighth interest therein?

As noted in the opinion, the original 1932 lease reserved only one-half of the "*oil* accruing to the seven-eighths working interests from that produced and saved from said land." (Opinion, at 2) The instrument did not include gas and plaintiffs do not so contend.[3] So, if plaintiffs are to recover their half of the working interest gas, it must be from some source other than the lease.

This follows because the terms of the lease show conclusively that the contracting parties knew the difference between "Oil" and "Gas, including Casinghead Gas or other gaseous substance". Compare Paragraph IV with Paragraph V of the lease. And, it is too late now to argue that "Oil" and "Gas" are not well-known terms with fixed and definite meanings. See *Magnolia Petroleum Co. v. Connellee*, 11 S.W.2d 158, 160 (Tex. Comm'n App. 1928, jdgmt adopted), and *Phillips Petroleum Co. v. Gillman*, 593 S.W.2d 152, 154 (Tex.Civ.App.—Amarillo 1980, writ ref'd n.r.e.).

Since I agree with the factual statements as well as the contentions, I adopt as my own the language used by defendant in its motion for rehearing addressing the effect of the 1935 Amendment which the court sets out at great length on page six of the opinion. Defendant's counsel uses this language:

> "Finally, again without explanation, the Court mentions in its Opinion the 1935 Amendment which refers to 'deliveries to lessors of one-half (½) of the oil, gas and other minerals accruing to the seven-eighths working interest.' Even the Appellees have never contended that this Amendment *reserved* or *created* the interest in working interest gas which they now claim. Instead, their position from the beginning has been that this language merely 'confirms' that such an interest was reserved to them by the original 1932 lease itself (Brief of Appel-

lees, p. 15), but they have never identified any provision in the lease which purports to reserve such an interest. Appellant submits that the 1935 Amendment cannot confirm the existence of an interest that was never created in the first place."

In *Sharp v. Fowler*, 151 Tex. 490, 252 S.W.2d 153, 154 (1952), Chief Justice Hickman restated a rule well founded in our jurisprudence, saying:

> "A reservation of minerals to be effective must be by clear language. Courts do not favor reservations by implication."

The 1932 lease was clear—oil was reserved out of the working interest; gas was not so reserved.

Finally, I note that under their twelfth assignment, defendant complains that we overruled " 'all of appellant's points of error' " without discussing any of the points which related to ratification, waiver, estoppel, adverse possession, or limitations bar, all of which were properly before us.

I now withdraw my concurrence in the original opinion and enter this dissent from an affirmation of the trial court's judgment.

---

**3.** At page 6 of plaintiffs' brief, we find this statement: "Neither do Appellees claim, as Sun implies, that the word 'oil', as used in this

Paragraph V, should be construed as including gas, casinghead gas and condensate."