CONCORD OIL COMPANY and
Crenshaw Royalty Corporation,
Appellants,

v.

PENNZOIL EXPLORATION AND PRO-
DUCTION COMPANY, Pennzoil Pro-
ducing Company, Sanchez–O'Brien Oil
& Gas Corporation, and John M. Robin-
son, Appellees.

No. 04–93–00374–CV.

Court of Appeals of Texas,
San Antonio.

March 30, 1994.

Rehearing Denied May 25, 1994.

Andy Carson, Matthews & Branscomb,
P.C., Corpus Christi, Ernest E. Smith, Aus-
tin, Judith R. Blakeway, Matthews & Bran-
scomb, San Antonio, Bruce M. Kramer, Lub-
bock, Luther H. Soules, III, Soules & Wal-
lace, San Antonio, for appellants.

John M. Robinson, Houston, John G.
Soule, Jaime L. Capelo, Jr., Scott, Douglas &
Luton, L.L.P., Austin, Tevis Herd, Cotton,
Bledsoe, Tighe & Dawson, Midland, Frank
Douglas, Scott, Douglass & Luton, L.L.P.,
Dallas, Kenneth E. Broughton, Jeff Nobles,
Alene Levy, John Gaston, Maria Teresa Ar-

guindegui, Haynes and Boone, L.L.P., Houston, for appellees.

Before CHAPA, C.J., and PEEPLES and LOPEZ, JJ.

## OPINION

PEEPLES, Justice.

At issue in this oil and gas case is the size of a mineral interest conveyed by a 1937 deed executed while the grantor's interest was subject to a producing lease. The deed in question contains two different fractions: the granting clause conveys a $\frac{1}{96}$ interest in the minerals, while the subject-to clause says the deed covers and includes $\frac{1}{2}$ of rentals and royalty. The deed does not contain a future-lease clause. The case was tried to the court on stipulated facts. The trial court held that the deed conveyed two estates of different sizes and durations: a $\frac{1}{96}$ perpetual interest in the minerals, and a $\frac{1}{2}$ interest in rentals and royalties which ended when the existing lease expired. Appellants contend that when all parts of the deed are harmonized and interpreted in the context of oil and gas law of the 1930's, one estate of $\frac{1}{2}$ of the minerals was conveyed. We affirm the judgment.

All parties trace their title to A.B. Crosby, who received a $\frac{1}{2}$ mineral interest from Emilia T. de la Garza on August 4, 1937. The following day, August 5, Crosby executed a deed to Southland Lease and Royalty Corporation which contained the following pertinent provisions:

[The granting clause:]

That I, A.B. Crosby ... do Grant, Sell and Convey unto Southland Lease & Royalty Corporation ... an undivided one-ninety sixth ($\frac{1}{96}$) interest in and to all of the oil, gas and other minerals in and under, and that may be produced from [legal description of leasehold] together with the right to prospect for and exploit the same ... with the right of ingress and egress at all times ... together with all rights of every kind and character necessary and convenient to the full use and enjoyment of such estate herein conveyed....

[The subject-to clause:]

While the estate hereby conveyed does not depend upon the validity thereof, neither shall it be affected by the termination thereof, this conveyance is made subject to the terms of any valid subsisting oil, gas and/or mineral lease or mineral lease or leases on above described land or any part thereof, but covers and includes one-twelfth ($\frac{1}{12}$) of all rentals and royalty of every kind and character that may be payable by the terms of such lease or leases insofar as the same pertain to the above described land, or any part thereof.

The deed does not contain a clause expressly dealing with future leases.

Plaintiff–Appellants Concord Oil Company and Crenshaw Royalty Corporation ("Concord") are the successors in title to Southland. Defendant–Appellees Pennzoil Exploration and Production Company, Pennzoil Producing Company, Sanchez–O'Brien Oil & Gas Corporation, and John M. Robinson ("Pennzoil") also hold title from Crosby pursuant to a 1961 warranty deed conveying a $\frac{7}{96}$ mineral interest to Robinson.

Three distinct issues are presented. The first and central issue is whether the 1937 Crosby–Southland deed conveyed all of Crosby's $\frac{1}{2}$ interest, or only $\frac{1}{96}$; if it conveyed Crosby's entire $\frac{1}{2}$ to Southland, the Concord parties succeeded to all of his $\frac{1}{2}$ and he did not own $\frac{7}{96}$ to convey to the Pennzoil parties in 1961. Second, if the deed conveyed a $\frac{1}{96}$ interest in the minerals, an additional issue is whether the subject-to clause nevertheless grants a $\frac{1}{2}$ interest in future leases. The third and final issue is whether the court erred in ruling the deed unambiguous and excluding extrinsic evidence.

## I.

The trial court accepted Pennzoil's argument that the deed made two separate grants: (1) the granting clause conveyed a perpetual $\frac{1}{96}$ fee in the mineral estate, and (2) the subject-to clause conveyed a limited-duration $\frac{1}{2}$ interest in the existing $\frac{1}{8}$ royalty, which terminated when the 1937 lease terminated and which did not extend to any future leases. Under this reading, the deed conveyed $\frac{1}{96}$ of the minerals in perpetuity; Crosby still owned the other $\frac{7}{96}$ and ultimately it

passed to the Pennzoil parties beginning with the 1961 conveyance to Robinson.

Concord contends that the parties were acting under the oil and gas notions that prevailed during the 1920's and 1930's, and the deed conveyed only one interest, a single estate consisting of $\frac{1}{12}$ of the minerals. This $\frac{1}{12}$ interest was subject to a producing lease which entitled the owner to a $\frac{1}{8}$ royalty on the $\frac{1}{12}$ mineral interest equal to $\frac{1}{96}$ of production. According to Concord this explains why the parties used the fraction $\frac{1}{96}$ in the granting clause.

Form deeds from the 1920's and 1930's often contain different fractions in different blanks. Scholars and practitioners agree that the three-grant deed [1] from this era was not meant to convey separate estates but was developed in response to the holding in *Caruthers v. Leonard*, 254 S.W. 779 (Tex. Comm'n App.1923, judgm't adopted). The *Caruthers* court held that a mineral deed did not convey an interest in delay rentals (or, presumably, the royalties) under an existing lease unless there was express language of assignment. "Thus, the three-grant deed came into vogue, not to provide parties with a mode for making separate conveyances in one deed, but to insure that a single grant of a fractional mineral interest included a proportionate interest in benefits under existing and future leases." Laura H. Burney, *The Regrettable Rebirth of the Two-Grant Doctrine in Texas Deed Construction*, 34 S. TEX.

L.REV. 73, 86 (1993) [hereafter cited as "Burney"].

The supreme court overruled *Caruthers* in *Harris v. Currie*, 142 Tex. 93, 176 S.W.2d 302 (1943), and under present law a conveyance of a mineral interest also conveys the corresponding rights to receive royalties under existing and future leases. No separate assignment is necessary. The subject-to clause serves to protect the grantor from a breach-of-warranty suit when the leasehold is subject to an existing lease. *See* RICHARD W. HEMINGWAY, THE LAW OF OIL AND GAS § 9.1, at 497 (3d ed. 1991). But multi-clause deed forms were widely used for several years and are commonly present in the chain of title. "It is virtually impossible to find a producing oil or gas property in which such deeds are not found in the chain of title. It is therefore extremely important that the courts lay down firm rules of construction to use in construing three-grant deeds." [2] Tevis Herd, *Conveyancing—The Implications of Alford v. Krum on the Two–Grant Theory and a Review of the Duhig Rule*, STATE BAR OF TEXAS, ADVANCED OIL, GAS AND MINERAL LAW COURSE, at F–3 (September 1989).

■ Parties may of course convey different fractional interests in one instrument. *Luckel v. White*, 819 S.W.2d 459, 463–64 (Tex.1991); *Woods v. Sims*, 154 Tex. 59, 273 S.W.2d 617, 621 (1954); *Richardson v. Hart*, 143 Tex. 392, 185 S.W.2d 563, 564–65 (1945).

1. The term "three-grant deed" refers to a deed with three blanks to be filled in: one in the granting clause, one in the subject-to clause pertaining to existing leases, and one in the future-lease clause.

2. The historical reasons for the three-grant deed have been well summarized as follows:
   The so-called "three-grant" deed was created in response to a bad decision [*Caruthers v. Leonard*] from our courts and the existence and use of this form of instrument have from its inception presented constant and difficult construction problems. The judicial decisions construing these instruments create a zig-zag line as the courts have attempted to balance the subjective intent of the parties, the expressed intent of the parties and the public's need for consistent deed construction rules that can be applied without the assistance of the courts. . . .
   The "three-grant" deed contains the following three blanks and each blank requires a fraction: (1) granting clause in mineral estate or to royalty; (2) interest in presently existing lease; and (3) interest in future leases (or percentage of possibility of reverter).
   Presumably, it is usually the intent of the parties that the grantee receive the same undivided interest in the mineral estate, the present lease and future leases, and if so, the "three-grant" deed should have the same fraction inserted in each of the three blanks. While this was probably done in the overwhelming percentage of the cases where forms were used, the cases discussed below attest to the fact that the ability of laymen, or lawyers for that matter, to properly fill in the blanks in legal forms should not be taken for granted.
   Terry I. Cross, *Conveyancing—From Repugnance To Harmony—The Demise of Alford v. Krum*, in STATE BAR OF TEXAS, ADVANCED OIL, GAS AND MINERAL LAW COURSE, at F–1 (September 1992) [hereafter cited as "Cross"].

But it is highly unlikely that many parties really mean to do so; on the contrary, most parties mean for the deed to convey a single fractional interest in the minerals, the existing lease, and future leases.[3] Ernest E. Smith, *The "Subject To" Clause*, 30 ROCKY MTN. MINERAL LAW INSTITUTE § 15.02[1] 1985); Burney, *supra*, at 91; Cross, *supra*, at F–1. As Professors Williams and Meyers have written, "The oft-repeated expression that a grantor has the power to convey by one instrument different interests in the possibility of reverter and under the subsisting lease should not obscure the fact that very few grantors really intend to convey interests of different magnitude." *See* 2 HOWARD R. WILLIAMS & CHARLES J. MEYERS, OIL AND GAS LAW § 340.2, at 242–43 (1991).

When interpreting deeds courts avoid using mechanical, arbitrary rules of construction and instead determine the intent of the parties from the language found within the instrument's four corners. *Luckel v. White*, 819 S.W.2d at 461–63; *Garrett v. Dils Co.*, 157 Tex. 92, 299 S.W.2d 904, 906 (1957); *Harris v. Windsor*, 156 Tex. 324, 294 S.W.2d 798, 800 (1956); *Sun Oil Co. v. Burns*, 125 Tex. 549, 84 S.W.2d 442, 443–44 (1935). In *Luckel* and *Garrett* the supreme court used the four-corners approach to deed construction and held that multi-clause deeds with different fractions granted a single interest. We are urged to use certain canons of construction; for example, it is often said that deeds are construed against the grantor to convey the greatest estate possible. We are not convinced that the greatest-estate canon is appropriate in this multiple-grant case. *See* Bruce M. Kramer, *The Sisyphean Task of Interpreting Mineral Deeds and Leases: An Encyclopedia of Canons of Construction*, 24 TEX.TECH.L.REV. 1, 121 (1993). In any event, we decline to rely on such canons because the deed before us can be harmon-

ized, and its meaning determined, without them. *See Texas Pac. Coal & Oil Co. v. Masterson*, 160 Tex. 548, 334 S.W.2d 436, 438–39 (1960); Kramer, 24 TEX.TECH.L.REV. at 118–19.

Having studied the deed before us and sought the intent of the parties *as expressed within the four corners of the instrument*, we conclude that the deed conveys ⅟96 of the minerals. We recognize that this may not have been the parties' subjective intent. But Concord has not sought reformation of the 1937 deed to correctly reflect Crosby's and Southland's true subjective intent and we therefore may not grant that relief or be guided by their presumed actual subjective intent. The issue before us is interpretation of the deed as written, not reformation to reflect subjective intent.

Both parties place great reliance on the supreme court's decision in *Garrett v. Dils Co.*, 157 Tex. 92, 299 S.W.2d 904 (1957). In *Garrett* the granting clause conveyed ⅟64 of the minerals, and ⅛ of royalty under existing leases *and future leases*. The court held that the deed conveyed ⅛ of the minerals. But the 1937 Crosby–Southland deed contains no future-lease clause; in this regard the deed is more like the one at issue in *Pan American Petroleum Corp. v. Texas Pac. Coal & Oil Co.*, 340 S.W.2d 548 (Tex.Civ. App.—El Paso 1960, writ ref'd n.r.e.). There the deed conveyed a ⅟32 mineral interest and a ¼ interest in existing royalty and rentals. Because there was no future-lease clause, the court held that the deed conveyed a permanent ⅟32 mineral interest with ¼ of the royalty payable under existing leases. *Id.* at 557–58.[4]

We think *Pan American* is correct in holding that *Garrett* does not apply to leases with no future-lease clause. In *Garrett* the court reasoned that if the granting clause had stood alone, the deed would have conveyed

---

3. Ordinarily the future-lease clause is unnecessary because conveyance of the minerals entitles the grantee to the royalty interest under future leases even if there is no express future-lease clause. RICHARD W. HEMINGWAY, THE LAW OF OIL AND GAS § 9.1, at 498–99 (3d ed. 1991).

4. The court summarized its holding as follows: "The [existing] leases having expired, and the deed containing no language which would clear-

ly show that the parties intended to convey a separate royalty interest beyond the life of the leases specified, such royalty terminated when the several leases expired, and there remained only the corresponding royalty interest [grantees] were entitled to receive by virtue of their ownership of a specific interest in the oil, gas, and other minerals in place." *Id.* at 557.

only $\frac{1}{64}$. But the existing-lease clause gave a $\frac{1}{8}$ interest in the royalty. Thus, *as to existing leases*, said the court, the royalty would be $\frac{1}{8}$ of the $\frac{1}{8}$ royalty, not $\frac{1}{64}$ of $\frac{1}{8}$. 299 S.W.2d at 906. Similarly, *as to future leases* the grantee was entitled to $\frac{1}{8}$ of the $\frac{1}{8}$ royalty ($\frac{1}{64}$), not $\frac{1}{64}$ of $\frac{1}{8}$. *Id.* The court reasoned that the existing- and future-lease clauses assumed that most royalties would be $\frac{1}{8}$, and the court took judicial notice that $\frac{1}{8}$ is the usual royalty fraction. *Id.* at 907. Because the grantee owned the right to receive $\frac{1}{8}$ of the royalty under future leases, "in reality [the grantee] is the owner of one-eighth of the minerals in the land." *Id.* In other words, because the future-lease clause gave the grantee all the incidents of ownership, the grantee owned $\frac{1}{8}$ of the minerals themselves.

The case before us is entirely different because the 1937 Crosby–Southland deed does not contain a future-lease clause. Thus the *Garrett* reasoning does not govern the 1937 deed and *Pan American* applies. Professor Hemingway suggests that this is the correct reading of a deed with different fractions in the granting and subject-to clauses where there is no future-lease clause.[5]

Our construction of the deed is consistent with the results in *Luckel v. White*, 819 S.W.2d 459 (Tex.1991), and *Jupiter Oil Co. v. Snow*, 819 S.W.2d 466 (Tex.1991), because in each case the deed contained clauses dealing with future rights after existing leases terminated. In *Luckel* the deed's granting clause conveyed a $\frac{1}{32}$ royalty; the existing-lease and future-lease clauses conveyed $\frac{1}{4}$ royalty interests. The court held that the deed conveyed a $\frac{1}{4}$ royalty interest in all future leases. In *Jupiter* the granting clause conveyed a $\frac{1}{16}$ mineral interest while the existing-lease clause conveyed a $\frac{1}{2}$ royalty interest and the future-lease clause conveyed a $\frac{1}{2}$ mineral interest. The court held that the deed conveyed $\frac{1}{2}$ of the minerals upon termination of the existing lease.

■ The public interest in certainty of land titles is overriding and paramount.

Those who interpret mineral deeds with two-grant deeds in the chain of title must have a stable body of law as their guide. All such deeds must be interpreted within their four corners, and *Garrett* and *Pan American* correctly guide that interpretation. Over the years, lawyers faced with a two-grant deed in the chain of title have presumably given title advice consistently with the cases espousing the two-grant theory of interpreting deeds, cases that have been on the books for several decades. *See, e.g., Woods v. Sims*, 154 Tex. 59, 273 S.W.2d 617 (1954); *Richardson v. Hart*, 143 Tex. 392, 185 S.W.2d 563 (1945). We have no way of knowing which precedents title lawyers have relied upon. But in view of the precedents discussed above, we think it would be an abrupt change to hold that the deed before us—with a $\frac{1}{96}$ granting clause, a $\frac{1}{12}$ existing-lease clause, and no future-lease clause—conveyed $\frac{1}{12}$ of the minerals. Even if the two-grant doctrine does not comport with what the parties probably intended, the doctrine has been part of Texas law for at least half a century. *Garrett* and *Pan American*, which stress the future-lease clause, have stood since 1957 and 1960 respectively. We conclude that both fractions in this deed must be given effect because there is no express future-lease clause to conflict with the granting clause.

■ Concord argues that during the 1920's and 1930's many grantors and grantees in the position of Crosby and Southland might have thought that Crosby owned $\frac{1}{12}$ of $\frac{1}{8}$ instead of $\frac{1}{12}$ of $\frac{8}{8}$ of the possibility of reverter; they might have thought that the existing lease left Crosby with only $\frac{1}{8}$ of the $\frac{1}{12}$ mineral interest he had bought from de la Garza, or $\frac{1}{96}$, and that he meant to convey all his mineral interest. Concord argues that those dealing with oil and gas leases during this era frequently thought that the owner who signed a lease retained $\frac{1}{8}$ of the minerals in place. By contrast, current law recognizes that the owner has only a $\frac{1}{8}$ royalty interest burdening the lessee's leasehold estate and 100% of the possibility of reverter in the

---

5. HEMINGWAY § 9.1, at 500. Concerning *Garrett v. Dils*, Professor Hemingway says, "Had the deed not contained a future lease clause, it is clear that the grantee would have owned a $\frac{1}{64}$ [the smaller fraction, contained in the granting clause] permanent mineral interest." *Id.* § 9.1, at 502.

minerals if and when the lease terminates.[6] Thus Concord asks us to hold that Crosby and Southland misunderstood the nature of the oil and gas interests involved in the 1937 deed.

This is essentially an argument for reformation based on mutual mistake and not an argument for interpretation.[7] In any event, this theory has been available for decades, and we are not aware of any cases that have expressly accepted it. The supreme court rejected a similar argument in *Luckel v. White*, 819 S.W.2d at 462. Indeed, the courts have employed the two-grant analysis in several cases. It would be extremely disruptive to land titles for us to hold that even without a future-lease clause, a two-grant deed conveys the larger fraction, simply because many landowners and lessees in an earlier era may have misunderstood the oil and gas estates involved and intended to convey a single fractional estate.

Concord also stresses the particular language of this deed, which refers to a single estate. The last sentence of the granting clause refers to "such *estate* herein conveyed" and the first sentence of the subject-to clause refers to "the *estate* hereby conveyed." Concord contends that use of the singular "estate" refutes the notion that this is a two-grant deed conveying two estates.

As we read the deed, the word "estate" refers to the mineral interest conveyed in the granting clause. The deed uses the term "estate" in two successive sentences: the last sentence of the granting clause ("such estate herein conveyed") and the first sentence of the subject-to clause ("the estate hereby conveyed"). The estate mentioned in the granting clause can refer only to the estate conveyed in that paragraph—the 1/96 mineral estate. The most sensible construction is that

when the same word is used in the next sentence, it refers to the same estate—the mineral estate. The use of the singular "estate" simply means that the parties thought they were dealing with one mineral estate (1/96) and also a larger temporary interest (1/12) in the proceeds under the existing lease.

The deed says that "the estate hereby conveyed does not depend upon the validity [of subsisting leases], neither shall it be affected by the termination [of subsisting leases]." But this language simply states the truism that the 1/96 mineral estate is not affected by the validity or termination of the existing lease. The 1/96 mineral estate did not "depend upon the validity" of the existing lease and was not "affected by the termination" of the existing lease; it remained the same throughout.

For the reasons stated, we reject the notion that the deed made a single conveyance of a single estate of 1/12 of the minerals. We hold that the deed conveyed only a 1/96 mineral interest, in addition to the 1/12 interest in the existing lease which expired when the lease terminated.

## II.

■ Concord next argues that if, as we have held, the deed conveys two separate estates—1/96 of the minerals and 1/12 of the royalties and rentals under "subsisting leases"—the latter grant is a perpetual royalty extending to future leases as well as the one in existence in 1937, which terminated long ago. We cannot accept this reading of the deed. The subject-to clause says:

While the estate hereby conveyed does not depend upon the validity thereof, neither shall it be affected by the termination

6. An oil and gas "lease" is really a conveyance of the minerals in fee for a term measured by the continued oil production from the land. It creates a fee simple determinable in the lessee; the lessor retains a future interest called a possibility of reverter consisting of the right to the fee simple estate in the minerals if the lease terminates. The lessor also reserves a fraction of the actual oil production as a royalty, which is part of the possibility of reverter. *See Luckel v. White*, 819 S.W.2d 459, 464 (Tex.1991); *Jupiter Oil Co. v. Snow*, 819 S.W.2d 466, 468 (Tex.1991).

7. Although we have not considered extrinsic evidence in interpreting the deed, we note that de la Garza (Crosby's grantor one day before) was not under this misconception about the oil and gas estates. When she conveyed her 1/12 mineral interest to Crosby on August 4, 1937, she used consistent fractions (1/12) in both the granting clause and the subject-to clause. The August 4 de la Garza–Crosby deed is identical to the August 5 Crosby–Southland deed, except that the latter deed contains fractions of 1/96 and 1/12.

thereof, this conveyance is made subject to the terms of any valid subsisting oil, gas and/or mineral lease or mineral lease or leases on above described land or any part thereof, but covers and includes one-twelfth ($\frac{1}{12}$) of all rentals and royalty of every kind and character that may be payable by the terms of such lease or leases insofar as the same pertain to the above described land, or any part thereof.

In our view, this clause means simply that the mineral interest conveyed in the granting clause is not affected by the $\frac{1}{12}$ royalty interest in existing leases. That is, the deed conveys a $\frac{1}{96}$ mineral interest and in addition a term royalty interest in existing leases; the "no affect" language means that the mineral interest is unaffected by the existence or termination of the existing lease or leases.

Concord asks us to interpret the subject-to clause as follows: "While the estate [the $\frac{1}{12}$ royalty interest] hereby conveyed does not depend upon the validity thereof [of the existing lease], neither shall it [the royalty interest] be affected by termination thereof [of the existing lease]...." According to Concord, this language means the $\frac{1}{12}$ royalty estate is not "affected by termination" of the existing lease—that is, there is a perpetual future-lease royalty of $\frac{1}{12}$. We reject this interpretation. As we have said, a fair reading of the instrument within its four corners is that the "estate hereby conveyed" refers to the $\frac{1}{96}$ mineral interest. In other words, the term "estate" contemplates the mineral estate, which is not affected by the continuance or termination of the existing lease.

Concord argues that the word "estate" in the subject-to clause cannot refer to the mineral estate because if the mineral estate is not "affected" by termination of the existing lease, the reverter can never occur. We agree that this would be illogical, and in our view the "no affect" language has no bearing on the reverter, whether it is $\frac{1}{96}$, as we have held, or $\frac{1}{12}$, as Concord urges.

The subject-to clause refers to "any valid *subsisting* ... leases." Concord's interpretation of the clause would effectively change this phrase to "any valid leases," including future leases. But we cannot ignore the word "subsisting," which means existing or continuing. The clause does not say that the estate conveyed covers and includes all leases; it says *subsisting* leases.

We hold that the subject-to clause applies only to leases then in existence and not to future leases. After the existing lease terminated in 1937, Southland and its successors had only a $\frac{1}{96}$ mineral interest.

### III.

 Concord also argues that because the deed contains different fractions it is ambiguous and the court should have admitted extrinsic evidence of the parties' intent. We reject this contention because the deed interpreted within its four corners does not contain conflicting provisions. Even the deed in *Garrett v. Dils Co.*, 157 Tex. 92, 299 S.W.2d 904 (1957), which had conflicting granting and future-lease clauses, was considered unambiguous. In contrast, the Crosby–Southland deed does not contain conflicting provisions. The trial court correctly considered the deed to be unambiguous and properly declined to hear extrinsic evidence.

The judgment is affirmed.